MARATHON OIL COMPANY, an Ohio corporation, Plaintiff-Appellant,

v.

UNITED STATES of America; United States Department of the Interior; Donald Hodel, Secretary of the Interior; Esther Wunnicke, Commissioner of the Department of Natural Resources, State of Alaska; Cook Inlet Region, Inc., an Alaska corporation, Defendants-Appellees.

COOK INLET REGION, INC., an Alaska corporation, Counterclaimant,

v.

MARATHON OIL COMPANY, an Ohio corporation, Counterdefendant.

No. 85-3800.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 1986.

Decided July 24, 1986.

* The HONORABLE PATRICK A. CONMY, Chief Judge, United States District Court for the District of North Dakota.

Charles J. Meyers, Gibson, Dunn & Crutcher, Denver, Colo., for plaintiff-appellant.

Robert L. Klarquist, Dept. of Justice, Washington, D.C., William D. Temko, Munger, Tolles & Rickershauser, Los Angeles, Cal., for defendants-appellees.

Before WRIGHT and WALLACE, Circuit Judges, and LEGGE,* District Judge.

WALLACE, Circuit Judge:

Marathon Oil Company (Marathon) appeals from the district court's dismissal of its claims and from the entry of summary

* Honorable Charles A. Legge, United States District Judge, Northern District of California, sitting by designation.

judgment and an injunction on the government's counterclaim that required it to pay production royalties on federal oil and gas leases based on a net back valuation formula. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), and we affirm.

## I

Marathon owns a 50% working interest in certain federal oil and gas leases in the Kenai Field Unit in Alaska. The leases require Marathon to pay 12½% royalty on the reasonable value of production from the leased lands "computed in accordance with the Oil and Gas Operating Regulations (30 C.F.R. Pt. 221) [now codified in relevant part at 30 C.F.R. § 206.103 (1985)]." The statutory authorization for promulgating the Oil and Gas Operating Regulations is found at 30 U.S.C. § 226(c). The government, the State of Alaska, and Cook Inlet Region, Inc. (Cook Inlet) are each entitled to receive a percentage of the royalties. Marathon transports about 16% of its share of the gas produced in the Kenai Field Unit to a liquefied natural gas plant owned by Marathon and Phillips Petroleum Company. After the gas is reduced to a liquid state, Marathon transports the liquefied natural gas in tankers to Japan where it is sold. Marathon computed royalties on the liquefied natural gas sold in Japan based on the price paid for Kenai Field Unit gas under a long-term contract it had to sell unliquefied gas to the Alaska Pipeline Company.

In 1977, the United States Geological Survey (USGS), which was responsible for managing federal oil and gas leases, concluded that the royalty value for the liquefied natural gas sold in Japan should reflect its sales price in Japan less expenses. Marathon objected to USGS's proposed net back valuation formula. In an effort to resolve the dispute, an agreement was entered into that required Marathon to pay royalties as computed according to the "Phillips formula." The Phillips formula required Marathon to pay royalties based on 36% of the price received in Japan for the liquefied natural gas, less certain ad-

justments. The agreement was to remain in effect until market conditions changed or applicable laws necessitated revision of the valuation method.

In ·1983, the Mineral Management Service (the Service), which succeeded USGS as the government agency responsible for managing the involved leases, notified Marathon that it intended to redetermine the reasonable value of production of the Kenai gas delivered to the liquefied natural gas plant. The Service told Marathon that the basic net back approach as incorporated into the Phillips formula was sound, but that certain adjustments needed to be made to reflect current costs and prices. The new royalty valuation formula required subtraction of certain actual costs, instead of a fixed percentage, from the sales price of the liquefied natural gas.

Although it was not required to do so by statute, the Service held a public hearing at which Marathon appeared and was permitted to make comments, to state opinions, and to provide statements of facts concerning the new royalty valuation formula. The Service designated a 30–day period following the hearing for comments in which all interested parties could provide additional information or make additional arguments in favor of their position. After the 30-day period expired, the Service issued an order directing Marathon to pay royalties based on the revised royalty valuation formula. Marathon appealed the order to the Director of the Service, alleging that the Service had repudiated the settlement agreement entered into by Marathon and USGS. In addition, Marathon ceased paying royalties based on the agreed-to Phillips formula and began computing royalties based on the long-term contract price paid to the Alaska Pipeline Company.

The Service issued a second order directing Marathon to compute royalties according to the Phillips formula from the date Marathon began computing royalties based on the terms of the long-term contract to the effective date of the order requiring compliance with the revised royalty valuation formula. Marathon did not comply

with this second order either. The Department of the Interior (the Department) then issued a third order, at the direction of the Secretary of the Interior (the Secretary), directing Marathon to comply with the previous two orders.

Marathon filed a declaratory relief action, 28 U.S.C. § 2201, in district court seeking, among other things, a determination of the proper method of valuing the royalty for natural gas which was liquefied and sold in Japan. The government sought to have Marathon's claims dismissed and counterclaimed to enforce the previous orders and to recover unpaid royalties. The government requested a preliminary injunction to compel Marathon to comply with the Service's orders, and moved for summary judgment. The district court deferred ruling on the government's request for a preliminary injunction until the motion for summary judgment was heard. The district court then granted the government's motion for summary judgment on its counterclaim, dismissed Marathon's claims and issued an injunction ordering Marathon to comply with the orders. The district court retained jurisdiction, however, until an accounting to determine royalties due from Marathon had been completed. A more extensive statement of the facts appears in the district court opinion, see *Marathon Oil Co. v. United States,* 604 F.Supp. 1375, 1376–78 (D. Alaska 1985) (*Marathon*).

## II

■ Marathon's complaint requested a declaratory judgment to determine the proper method of valuing production for royalty purposes. The Declaratory Judgment Act, 28 U.S.C. § 2201, however, does not create an independent jurisdictional basis for actions in federal court. *See Fiedler v. Clark,* 714 F.2d 77, 79 (9th Cir.1983) (per curiam); *Alton Box Board Co. v. Esprit de Corp.,* 682 F.2d 1267, 1274 (9th Cir.1982). Therefore, we must decide whether the administrative orders that required Marathon to pay production royalties based on the net back valuation formu-

la were final agency actions reviewable by the district court pursuant to the jurisdictional grant of section 10(c) of the Administrative Procedures Act, 5 U.S.C. § 704. *See FTC v. Standard Oil Co.,* 449 U.S. 232, 238, 101 S.Ct. 488, 492, 66 L.Ed.2d 416 (1980).

■ The Supreme Court has instructed us to interpret "pragmatically the requirement of administrative finality, focusing on whether judicial review at the time will disrupt the administrative process." *Bell v. New Jersey,* 461 U.S. 773, 779, 103 S.Ct. 2187, 2191, 76 L.Ed.2d 312 (1983). The third order issued by the Department, which required Marathon to comply with the previous two orders issued by the Service, contained the following language: "This order is issued at the direction of the Secretary and, accordingly, constitutes a final decision by the Department pursuant to 43 C.F.R. Section 4.5(a)." Section 4.5(a) indicates that the Secretary retains the power to take jurisdiction "at any stage of any case before any employee or employees of the Department ... and render the final decision in the matter." 43 C.F.R. § 4.5(a) (1985). The Secretary exercised this power and issued a final decision that required Marathon to comply with the previous two orders. Therefore, the district court had jurisdiction pursuant to section 10(c) of the Administrative Procedures Act to act on Marathon's claim for declaratory judgment and to decide the validity of the orders.

## III

■ That does not answer the question, however, of whether we have jurisdiction to review the district court's entry of summary judgment, partial dismissal and injunction. Section 1292(a)(1) provides us with jurisdiction to review "interlocutory orders of the district courts of the United States ... granting ... injunctions." After concluding that the Service's orders were appropriate and that the government was entitled to summary judgment and dismissal of Marathon's claims as a matter of law, the district judge issued an injunction that required Marathon to comply with the

orders. The entry of summary judgment and partial dismissal, however, was not a final judgment within the meaning of 28 U.S.C. § 1291 because the district court retained jurisdiction to conduct an accounting. *See Warehouse Restaurant, Inc. v. Customs House Restaurant, Inc.*, 726 F.2d 480, 481 (9th Cir.1984); *Hain Pure Food Co. v. Sona Food Products Co.*, 618 F.2d 521, 522 (9th Cir.1980) (per curiam). Therefore, the injunction, although permanent in nature, is an interlocutory order appealable under section 1292(a)(1). *See Smith v. Eggar*, 655 F.2d 181, 184–85 (9th Cir.1981); *Ackerman-Chillingworth, Division of Marsh & McLennan, Inc. v. Pacific Electrical Contractors Association*, 579 F.2d 484, 489 (9th Cir.1978), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 872, 59 L.Ed.2d 56 (1979); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3924, at 67–68 (1977).

Although we have jurisdiction to review the issuance of the injunction, we must also consider whether we have jurisdiction to review the summary judgment and partial dismissal. Marathon contends that we may do so based on the jurisdictional grant of section 1292(a)(1). "[A]n order granting or refusing an injunction brings before the appellate court the entire order, not merely the propriety of injunctive relief, and [we] may decide the merits of the case and order dismissal of the action." *Barrett v. Smith*, 530 F.2d 829, 830 (9th Cir.1975) (per curiam) (citation omitted), *cert. denied*, 425 U.S. 977, 96 S.Ct. 2179, 48 L.Ed.2d 801 (1976). As a general rule, however, we concern ourselves "only with the order from which the appeal is taken," *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 n. 11 (9th Cir.1977), and review other issues only if they are "inextricably bound up" with the injunction. *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 805 (9th Cir.1982); *see Fentron Industries, Inc. v. National Shopmen Pension Fund*, 674 F.2d 1300, 1304 (9th Cir.1982) (*Fentron*) (review of injunction necessarily involved deciding substantive issues).

In *Smith v. Vulcan Iron Works*, 165 U.S. 518, 17 S.Ct. 407, 41 L.Ed. 810 (1897) (*Smith*), the Supreme Court entertained a like jurisdictional challenge under very similar facts. In *Smith*, the district court entered an interlocutory judgment that a patent was valid, issued an injunction to prohibit infringement of the patent, and referred the case to a master to make an accounting of damages and profits. The defendant appealed, claiming that the patent was invalid and that it had not been infringed. The plaintiff moved to limit consideration on appeal to the propriety of the injunction. We concluded that the patent was invalid, that it had not been infringed, and reversed the interlocutory judgment of the district court. *Id.* at 518, 17 S.Ct. at 407. The plaintiff contended before the Supreme Court that we erred in deciding the merits based on a jurisdictional grant to review the propriety of the injunction. The Court, however, concluded that the appeal from the interlocutory permanent injunction permitted us to decide the case upon its merits. *Id.* at 525, 17 S.Ct. at 410. We have reached the same conclusion on a number of occasions. *See, e.g., Fentron*, 674 F.2d at 1304; *Long v. Bureau of Economic Analysis*, 646 F.2d 1310, 1317–18 (9th Cir.) (per curiam), *vacated on other grounds*, 454 U.S. 934, 102 S.Ct. 468, 70 L.Ed.2d 242 (1981).

■ Although we have expressed reluctance to review a denial of summary judgment when reviewing a preliminary injunction, *see Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir.1984), due in part to the fact that our review of a preliminary injunction is necessarily limited, *see Sports Form, Inc. v. United Press International, Inc.*, 686 F.2d 750, 752–53 (9th Cir.1982), we see no need to refrain from determining the validity of the orders in this case. The injunction here is a permanent rather than a temporary injunction. The legality and enforceability of the orders is inextricably bound up with the injunction that requires Marathon to comply with the orders. The district court has completed its consideration of the liability issue, retaining jurisdiction only for an accounting of damages. We conclude,

therefore, that we have jurisdiction pursuant to section 1292(a)(1) to review the summary judgment and partial dismissal and that we should do so in this case.

## IV

Marathon contends that the district judge erred in granting the government's motion for summary judgment and the resultant dismissal of Marathon's claims because the net back valuation formula adopted by the Service is contrary to the Mineral Lands Leasing Act, 30 U.S.C. §§ 181–287 (the Act), to the regulations and rulings issued pursuant to the Act, and to the terms of Marathon's leases. Marathon does not challenge the propriety of the injunction other than to argue that it was improper because it is based upon a wrongly decided summary judgment. Therefore, we need address only the correctness of the district court's entry of summary judgment.

We review the district judge's entry of summary judgment de novo and will affirm if, after reviewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Continental Casualty Co. v. City of Richmond*, 763 F.2d 1076, 1078–79 (9th Cir.1985); *Nevada v. United States*, 731 F.2d 633, 635 (9th Cir.1984).

The fact that we review the summary judgment de novo, however, does not mean that we review de novo the Service's decision to adopt the net back valuation formula and to issue the compliance orders. *See Cranston v. Clark*, 767 F.2d 1319, 1320 (9th Cir.1985); *Kidd v. Department of Interior, Bureau of Land Management*, 756 F.2d 1410, 1411–12 (9th Cir.1985). De novo review in this case means only that we view the case from the same position as the district court. In section 10(e) of the Administrative Procedures Act, 5 U.S.C. § 706, Congress established a deferential standard of review of agency decisions. This is especially true where, as here, the agency action being reviewed is not pursuant to agency rule making authority, 5 U.S.C. § 553, or action based on a public adjudication hearing, 5 U.S.C. §§ 556, 557. In the case before us, the informal agency decision in issue will not be reversed unless it is determined to be arbitrary, capricious, an abuse of discretion, or contrary to law. 5 U.S.C. § 706(2)(A); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–14, 91 S.Ct. 814, 822–23, 28 L.Ed.2d 136 (1971) (*Overton Park*). We must determine only whether a clear error of judgment has occurred and whether the agency based its decision upon consideration of relevant factors. *See Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823. Thus, we do not review the Service's decision to adopt the net back formula under the substantial evidence standard of section 706(2)(E) because the Service did not engage in rulemaking or base its decision on a public adjudicatory hearing. *Id.* at 414, 91 S.Ct. at 822.

■ The agency's interpretation of the applicable statute is entitled to substantial deference, particularly if the agency is charged with administering the statutes. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). Furthermore, an agency's interpretation of its regulations is " 'of controlling weight unless it is plainly erroneous or inconsistent with the regulation[s].' " *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965), *quoting Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *see Hawaiian Electric Co. v. EPA*, 723 F.2d 1440, 1447 (9th Cir.1984).

### A.

■ We have reviewed the district judge's well-reasoned opinion in this case. *See Marathon*, 604 F.Supp. 1375. The district judge applied the appropriate standard of review and concluded as a matter of law that the net back valuation formula did not violate the Act, that the formula was not contrary to agency regulations or rulings,

and that the formula was not inconsistent with the terms of Marathon's leases. We agree. This is not the first time we have concluded that it is not unreasonable for the Secretary to use a net back or net realization formula to compute the value of production for royalty purposes. *See Continental Oil Co. v. United States*, 184 F.2d 802, 820–21 (9th Cir.1950); *see also Ashland Oil, Inc. v. Phillips Petroleum Co.*, 554 F.2d 381, 387–88 (10th Cir.1977) (en banc) (government has often used a work back method to determine royalties due), *cert. denied*, 434 U.S. 921, 98 S.Ct. 396, 54 L.Ed.2d 278 and 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 456 (1977); R. Hemingway, *The Law of Oil and Gas* § 7.4, at 355 (1983) (proceeds language requires royalty computation based on sales price rather than market or field price). For the reasons so ably expressed by the district judge in discussing the issues before him, *Marathon*, 604 F.Supp. at 1380–90, we conclude that he did not err in upholding the validity of the net back valuation formula used in this case.

#### B.

Marathon has raised several additional arguments not addressed by the district judge. Marathon contends that the net back valuation formula is contrary to previous agency rulings. The district judge held that the Duletsky memorandum and the royalty payment order to Union Oil Company do not preclude application of the net back valuation formula. *See* 604 F.Supp. at 1383–84, 1389. In addition, however, Marathon contends, that the Notice to Lessees and Operators of Federal and Indian Onshore Oil and Gas Leases (NTL–5) demonstrates that a net back formula is contrary to agency regulations. Although Marathon relied on NTL–5 to support its position in the district court, the district judge did not specifically refer to it in his opinion. Consequently, we now consider the significance of NTL–5 to this case.

 Section V.C. of NTL–5 states that "[r]oyalty generally will be computed on the volume and value of marketable production at the lease, communitized area, or unit participating area boundary." Marathon relies on this language to argue that the value of production for royalty purposes should be determined at the well site. Such an argument, however, ignores critical language in section V.A., which states that "[u]nder no circumstances will royalty be computed on less than the gross proceeds accruing to the lessee or operator from the sale of leasehold production." Similar references to "the price received by the lessees" for the gas produced can be found in sections I.A.1 and II.B.1. We conclude that the implicit exception in section V.C. created by the word "generally" becomes operative when the use of the wellhead price to calculate royalties would result in a royalty being computed on less than the gross proceeds received by the lessee from the sale of the produced gas. Thus, the net back valuation formula does not conflict with language of NTL–5.

 Marathon also argued before the district court and contends before us that the net back valuation formula fails to consider all of the costs incurred in manufacturing and selling liquefied natural gas and that the potential imposition of an 8% reasonable rate of return is arbitrary and unjust. We conclude that these issues are not ripe for judicial review. The district court retained jurisdiction to conduct an accounting in order to determine the royalties due from Marathon. *Marathon*, 604 F.Supp. at 1390. Marathon has filed an accounting with the district court that raises a number of these same issues. The Service has reviewed Marathon's accounting and filed objections to the calculation procedures and factors used by Marathon to complete the accounting. The government and Cook Inlet contend that review of the accounting aspects of the net back valuation formula is premature and that we should wait until the district court has had an opportunity to prepare a more complete record. Because many of these same objections are presently being considered by the district court and because the factual record on these issues is not well devel-

oped, we decline to consider the merits of Marathon's objections to the specifics of the net back valuation formula at this time.

### C.

Marathon also contends that the district judge erred in granting the government's motion for summary judgment because there are genuine issues of material fact as to whether natural gas and liquefied natural gas are substantially similar, whether the Service waived administration of one of the involved leases held by Cook Inlet, and whether Cook Inlet improperly influenced the Service's decision to adopt the net back valuation formula.

### 1.

The district court concluded that liquefied natural gas is not "distinct from the natural gas at the wellhead" but rather "is natural gas that has been cooled for purposes of storage or shipment." 604 F.Supp. at 1386. Marathon contends that the district judge's determination that liquefied natural gas is essentially the same as natural gas required him to resolve disputed issues of material fact. We do not decide this issue because it was unnecessary for the district judge to make a finding of fact concerning the nature of liquefied natural gas. The deferential standard of review of informal agency decision-making requires only that we "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823.

Marathon first argued that liquefied natural gas is a manufactured product separate from natural gas in response to the USGS's request for information concerning the gross proceeds received from the sale of the liquefied natural gas in Japan. The USGS's incorporation of a net back approach into the Phillips formula and the Service's subsequent adoption of a net back formula based on certain actual costs represent a clear rejection of Marathon's argument. Although our examination of the facts in the administrative record "is to be searching and careful," we are not "empowered to substitute [our] judgment for that of the agency," *id.*

▮ Whether liquefied natural gas is different from natural gas is not before us and was not properly before the district court. Reviewing the informal agency decision in this case does not require us to consider whether there was substantial evidence in the record regarding the nature of liquefied natural gas. On the actual issue before us—the reasonableness of the Secretary's net back formula, *see id.*, Marathon has not pointed to any relevant factors that the Service failed to consider prior to issuing the order. Furthermore, we do not conclude that the Service clearly erred in adopting a net back valuation formula to determine royalties due on Marathon's sale of liquefied natural gas.

### 2.

Marathon also contends that a genuine issue of material fact exists as to whether the Service waived authority to administer one of the leases in the Kenai Field Unit conveyed to Cook Inlet by the government. Marathon relies on a letter the Service delivered to Union Oil Company and on an agency regulation, 43 C.F.R. § 2650.4–3 (1985), to contend that the Service has waived administration of the lease. The regulation provides that "administration shall be waived when the conveyance covers all the land embraced within a lease ... unless there is a finding by the Secretary that the interest of the United States requires continuance of the administration by the United States." *Id.* There was no need for the district court to decide whether the waiver occurred because the issue was not properly preserved. Marathon failed to raise this issue during the public hearing or during the 30-day comment period or in its appeal from the initial order.

▮▮ As a general rule, we will not consider issues not presented before an administrative proceeding at the appropriate time. *See Reid v. Engen*, 765 F.2d

1457, 1460 (9th Cir.1985) (*Reid*); *Inter-Tribal Council v. Department of Labor*, 701 F.2d 770, 771 (9th Cir.1983) (per curiam). We have recognized, however, a number of exceptions to the general rule. "We may decide an issue not raised in an agency action if the agency lacked either the power or the jurisdiction to decide it." *Reid*, 765 F.2d at 1461; *see Reese Sales Co. v. Hardin*, 458 F.2d 183, 187 (9th Cir.1972). This type of issue typically implicates the constitutionality of a statute or regulation where the agency does not have power to correct a claimed grievance. *Reid*, 765 F.2d at 1461; *see, e.g., Bagues-Valles v. INS*, 779 F.2d 483, 484 (9th Cir.1985). Marathon's contention that the Service waived authority to administer one of the leases in the Kenai Field Unit does not involve a constitutional question, suggest that agency power or jurisdiction to decide the issue was lacking, or suggest that the Service was foreclosed from responding to its claim. Therefore, this exception to the rule of administrative exhaustion is inapplicable here.

■ Another exception permits us to "decide issues over which an agency has power and jurisdiction when 'exceptional circumstances' warrant such review, notwithstanding the petitioner's failure to present them to the agency." *Reid*, 765 F.2d at 1461; *see Page v. Donovan*, 727 F.2d 866, 868 (9th Cir.1984); *Getty Oil Co. v. Andrus*, 607 F.2d 253, 255–56 (9th Cir. 1979). We have previously distinguished between administrative exhaustion requirements that are based on a statutory directive and those that are judicially imposed. *Reid*, 765 F.2d at 1462; *Montgomery v. Rumsfeld*, 572 F.2d 250, 252–53 (9th Cir.1978) (*Montgomery*). Statutory exhaustion requirements implicate concerns of separation of powers and, therefore, the failure to comply with the requirements deprives us of jurisdiction. *Reid*, 765 F.2d at 1462; *Montgomery*, 572 F.2d at 252–53. We are unaware of any statutory exhaustion requirements that apply here. Thus, we may review Marathon's contention that the Service waived authority to administer

one of the leases if exceptional circumstances exist.

In determining whether exceptional circumstances exist, we balance "the agency's interests 'in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, and the interests of private parties in finding adequate redress for their grievances.'" *Litton Industries, Inc. v. FTC*, 676 F.2d 364, 369–70 (9th Cir.1982), *quoting Montgomery*, 572 F.2d at 253. Marathon presents us with no reasons why it did not raise the questions it had concerning the alleged waiver during the agency proceedings. Marathon's failure to raise the issue precluded the Service from interpreting its own regulation, particularly with respect to the timeliness, form, and other requirements of the Secretary's finding. *See Reid*, 765 F.2d at 1462. After balancing the relevant interests, we conclude that Marathon has waived this argument by failing to raise it at the agency level. Marathon has provided us with no evidence of exceptional circumstances that would warrant consideration of this contention. *See Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs*, 644 F.2d 827, 832 (9th Cir.1981).

3.

Marathon also argues that there is a genuine issue of material fact concerning whether Cook Inlet improperly influenced the Service's decision to adopt the net back valuation formula. Marathon contends that private negotiations memorialized in a Memorandum of Understanding (MOU II) show that improper influence occurred. The district judge, however, concluded that since the order requiring compliance with the net back valuation formula was issued one month in advance of MOU II, Marathon's general allegations of impropriety failed to provide factual support for its theory of inappropriate and illegal negotiations. 604 F.Supp. at 1387–88; *see Burglin v. Morton*, 527 F.2d 486, 489 (9th Cir.

1975), *cert. denied,* 425 U.S. 973, 96 S.Ct. 2171, 48 L.Ed.2d 796 (1976). We agree.

Consequently, no genuine issue of material fact remained to prevent the district judge from granting the government's motion for summary judgment. *See Kung v. FOM Investment Corp.,* 563 F.2d 1316, 1318 (9th Cir.1977) (per curiam); *California v. Department of Transportation,* 561 F.2d 731, 733 n. 4 (9th Cir.1977).

AFFIRMED.