944 F.2d 908
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Montague GRIFFIN, Plaintiff-Appellant,
v.
Clayton YUETTER, Secretary of the U.S. Department of
Agriculture, et al., Defendants-Appellees.
 No. 90-55368.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 4, 1991.
Decided Sept. 11, 1991.
 
 Before WILLIAM A. NORRIS, CYNTHIA HOLCOMB HALL and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Montague D. Griffin appeals pro se summary judgment against him in an action seeking review of a decision by the Forest Service to issue a comprehensive land and resource management plan ("LRMP") for the Cleveland National Forest. The district court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.
 
 
 3
 * Appellant first challenges the district court's disposition of his case on summary judgment. Of the several objections he makes, only one--the sufficiency of the administrative record--merits discussion.[1] The Forest Service presented to the court the Record of Decision; the final LRMP; the final EIS; and relevant appendices. Appellant objects to the exclusion of the "planning records" upon which the EIS is based from this administrative record. Appellant's Informal Brief at 4; Reply Brief at 5.
 
 
 4
 Judicial review of agency action is generally limited to a review of the administrative record the agency presents to the district court. Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) (" 'The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court."); Friends of the Earth v. Hintz, 800 F.2d 822, 828 (9th Cir.1986) ("With a few exceptions ... judicial review of agency action is limited to a review of the administrative record."); 5 U.S.C. § 706 (a reviewing court "shall review the whole record or those parts of it cited by a party ") (emphasis added). Only if there is "such a failure to explain administrative action as to frustrate effective judicial review," should a court "obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary." Public Power Counsel v. Johnson, 674 F.2d 791, 793-94 (9th Cir.1982).
 
 
 5
 We find no error in the district court's decision to grant summary judgment on the record presented by the Forest Service. Having reviewed that record, we conclude that it provides an adequate explanation for the Service's decision and the factors weighed in reaching it. Since the planning materials are summarized in the EIS, had they been included they "might have supplied a fuller record, but otherwise [do] not address issues not already there." Friends of the Earth, 800 F.2d at 829. We also note that the Secretary's decision to incorporate by reference the planning documents into the EIS is consistent with regulations promulgated under the National Forest Management Act of 1976 (NFMA), 90 Stat. 2949 (codified as amended at 16 U.S.C. § 1604 (1988)), and the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321-61 (1988). See National Forest System Land and Resource Management Planning, 36 C.F.R. § 219.10(h) (1990); NEPA, Requirements for Environmental Impact Statements, 40 C.F.R. § 1502.20 (1990).
 
 II
 
 6
 Appellant challenges the Forest Service's adoption of the final LRMP and EIS on several grounds.
 
 
 7
 * He first argues that the Forest Service failed to give due consideration to competing uses of the Forest in drafting the LRMP. Specifically, he contends that the Forest Service (1) intentionally undervalued recreational needs, (2) overstated the value of cattle grazing interests, and (3) ignored the potential for conflict between the two uses. Appellant's Informal Brief, Attachment 1, at 3-4, 12-14. He claims that the LRMP therefore violates the NFMA and the Multi-Use Sustained-Yield Act of 1960 (MUSYA), 16 U.S.C. § 528-531 (1988), by failing adequately to provide for conflicting multiple forest uses. Id. at 5-6.
 
 
 8
 In reviewing the LRMP, we apply the APA's arbitrary and capricious standard. 5 U.S.C. § 706(2)(A) (1988). That is, we "must determine only whether a clear error of judgment has occurred and whether the agency based its decision upon consideration of relevant factors." Marathon Oil Co. v. United States, 807 F.2d 759, 765 (9th Cir.1986) (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)), cert. denied, 480 U.S. 940 (1987). This is particularly true in reviewing multiple-use statutes like MUSYA and NFMA, which "breathe[ ] discretion at every pore." Perkins v. Bergland, 608 F.2d 803, 806-07 (9th Cir.1979). "Only very narrow review is appropriate." Id. at 807.
 
 
 9
 A review of the administrative record makes clear that the Forest Service assessed the interests of both recreational users[2] and livestock owners,[3] and considered the potential conflict between them.[4] Under our "very narrow review" we may not reweigh the competing uses considered by the Forest Service. We find that the Service gave due consideration to the competing demands on the forest and that its decision was therefore not arbitrary and capricious.
 
 B
 
 10
 Appellant alleges that the Forest Service failed to comply with various NFMA and NEPA procedural requirements.
 
 
 11
 He contends that public participation in the process was inadequate. Appellant's Informal Brief, Attachment 1, at 9-12; Attachment 7 at 9. He specifically objects to the "scoping" process by which potential issues were screened for inclusion in the LRMP. Id., Attachment 1, at 10; Attachment 7, at 12. He also alleges that the Forest Service failed to review the "planning and land use policies of other Federal agencies, State and local governments, and Indian tribes, and publish in their EIS the results of this review in accordance with 36 CFR 219.7(c), 40 CFR 1502.16(c) and 40 CFR 1506.2." Id., Attachment 7, at 9. Finally, he alleges that the Forest Service failed to comply with NEPA in responding to public comment on the draft EIS.
 
 
 12
 * In identifying the issues to be addressed in the planning process, the Forest Service is required to solicit public input. 36 C.F.R. § 219.12(b). Among the steps to be taken are: (1) formal public notice through the news media, id. § 219.6(c); (2) public participation activities, such as meetings, conferences, or requests for public comment, id. § 219.6(d); (3) analysis of public comments, id. § 219.6(e); and (4) the availability of relevant documents and records for public inspection, id. § 219.6(i), (j).
 
 
 13
 The Forest Service complied with these requirements. General public notification was provided, public scoping sessions were held, comments were solicited and received, and records made available.
 
 2
 
 14
 In developing the LRMP, the Forest Service is required to "coordinate regional and forest planning with the equivalent and related planning efforts of other Federal agencies, State and local governments, and Indian tribes." 36 C.F.R. § 219.7(a). The Forest Service must both give notice to these entities and "review the[ir] planning and land use policies.... The results of this review shall be displayed in the [EIS]." Id. § 219.7(c).
 
 
 15
 Appellant alleges that the Forest Service failed to meet these requirements. Our review of the record discloses that they were met. The Service solicited comment from local community planning groups, public agencies, and Indian tribes. Ex. 11 at A-2, A-3. Potential conflicts with federal, regional, state, and local land use plans were noted in the FEIS. Ex. 10 at 4-91.
 
 3
 
 16
 Appellant argues that the Forest Service "ignored" public comment because it failed to modify significantly the draft EIS in response to comments received. Appellant's Informal Brief, Attachment 1, at 11; Attachment 7, at 12. He argues that this constitutes a violation of NEPA, which requires that an agency respond to comment by taking one or more of the following steps: (1) modifying the proposed action; (2) developing and evaluating new alternatives in response to the comment; (3) supplementing, improving, or modifying its analysis; (4) making factual corrections; or (5) "[e]xplain[ing] why the comments do not warrant further agency response, citing the sources, authorities, or reasons which support the agency's position." 40 C.F.R. § 1503.4(a).
 
 
 17
 We have reviewed the numerous public comments received by the Service and the Service's response to them. The Service discussed in detail numerous suggestions, incorporating some while rejecting others. We therefore cannot agree with appellant that the agency "ignored" public comment, and conclude that NEPA's requirements were satisfied by the response given.
 
 C
 
 18
 Appellant attacks the Forest Service's use of the FORPLAN program on three grounds: (1) the decision to employ a linear programming model for long-term resource allocation decision-making is contrary to "the fundamental postulates of the mathematical foundation of linear programming"; (2) FORPLAN was inappropriate in assessing alternative management plans for the Cleveland National Forest because FORPLAN is heavily weighted toward timber management and the Cleveland Forest has no timber industry; (3) FORPLAN was applied in such a way that its "output results were unreliable, inaccurate and misleading." Appellant's Informal Brief, Attachment 7, 8-9.
 
 
 19
 In essence, these are objections to the Forest Service's choice of methodology in developing the EIS. Under NEPA, challenges to the scientific methodology on which an EIS is based are limited. Friends of Endangered Species, Inc. v. Jantzen, 760 F.2d 976, 986 (9th Cir.1985) ("NEPA does not require that we decide whether an EIR is based on the best scientific methodology available, nor does NEPA require us to resolve disagreements among various scientists as to methodology."). The question is whether the procedures followed by the Forest Service resulted in a reasoned analysis of the evidence before it, and whether the Forest Service made the evidence available to all concerned. Id. Having reviewed the record, we cannot agree with appellant that the Service's FORPLAN precluded it from considering a broad range of alternatives as required by 36 C.F.R. § 219.12(f). While the alternatives shared certain similarities, we are confident that this is a function of the fact that the forest's physical conditions limits possible management options, see Ex. 11, Appendix K at K-21, rather than a failure to engage in reasoned decision-making.
 
 D
 
 20
 Appellant attacks the Forest Service's selection of the preferred alternative plan on several fronts. First, he argues that the LRMP fails to articulate a reasoned basis for the Service's selection of that alternative. Appellant's Informal Brief, Attachment 1, at 27; Reply Brief at 18. He further alleges that the "net public benefit" test upon which the Service relied is ambiguous and "fails to yield a rational basis for decisionmaking." Appellant's Informal Brief, Attachment 1, at 27; Attachment 7, at 10.
 
 
 21
 We cannot agree with appellant that the Forest Service failed to articulate a reasoned basis for its selection of the LRMP. The FEIS contains an extensive, 127-page discussion of the process by which alternatives were selected and evaluated and the final LRMP selected. Ex. 10 at 2-1.
 
 
 22
 As to his second argument, the Forest Service argues that the development of a multi-use plan is inherently discretionary, and that its regulations are a reasonable interpretation of this statutory mandate which must be affirmed under the principles of Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-43 (1984). We agree.
 
 
 23
 The statutory mandate at issue is 16 U.S.C. § 1604(e). That section provides in part,
 
 
 24
 In developing, maintaining, and revising plans for units of the National Forest System ... the Secretary shall assure that such plans--
 
 
 25
 (1) provide for multiple use and sustained yield of the products and services obtained therefrom in accordance with [MUSYA], and, in particular, include coordination of outdoor recreation, range, timber, watershed, wildlife and fish, and wilderness; ....
 
 
 26
 In implementing this mandate, the Forest Service's regulations require that LRMP's "provide for multiple use and sustained yield of goods and services from the National Forest System in a way that maximizes long term net public benefits in an environmentally sound manner." 36 C.F.R. § 219.1(a). Contrary to appellant's claim, this standard does not lack a "rational basis for decisionmaking." Rather, the regulations go on to establish fourteen principles which guide the process by which an LRMP is selected. See 36 C.F.R. § 219.1(b).
 
 
 27
 Given the inherently subjective nature of this decision-making process and the NFMA's extremely broad authorizing language, we uphold the Forest Service's interpretation of the statute as reasonable.
 
 III
 
 28
 Appellant argues that the Forest Service violated NEPA by failing to prepare, in addition to a general programmatic EIS, site-specific EIS's for two areas within the Forest--Caliente and Sill Hill--that had been designated as "further planning area[s]" under the California Wilderness Act of 1984,[5] and which were treated as "Unroaded, Natural Setting" under the LRMP. Appellant's Informal Brief, Attachment 1, at 26; Attachment 7, at 5-6.
 
 
 29
 * Appellant argues that the LRMP effectively treats the areas in question as "Nonwilderness" and that a site-specific EIS is therefore required under California v. Block, 690 F.2d 753 (9th Cir.1982).
 
 
 30
 The Forest Service argues that Block is distinguishable in that the areas have been, and will continue to be, managed as "further planning areas," with a limited management presence which preserves the ability to later designate the areas as wilderness. Thus, unlike the Nonwilderness designation at issue in Block, the designation given these lands is not a "critical decision" requiring a more exacting EIS. See id. at 762-763. Moreover, under section 111(b)(5) of the California Wilderness Act, Pub.L. No. 98-425, 98 Stat. 1619, 1629, which was enacted after Block, these areas "need not be managed for the purpose of protecting their suitability for wilderness designation prior to or during the revision of [LRMP's]." Finally, the Forest Service argues that even if site-specific information and analysis are required, they are contained in Appendix C of the EIS.
 
 
 31
 We agree with the Forest Service and find that a site-specific EIS is not required for the two planning areas. Since the areas will be managed in essentially the same manner before and after the adoption of the LRMP, the adoption of the plan does not constitute a "critical decision" requiring a site-specific EIS.
 
 B
 
 32
 Appellant presents another argument about the sufficiency of the Forest Service's assessment of the two study areas. He claims that the EIS is deficient in that it fails to comply with NFMA implementing regulations which require detailed evaluation of roadless areas.
 
 
 33
 Section 219.12(f) of the NFMA implementing regulations requires that the EIS formulate alternatives which are "consistent with the resource integration and management requirements of §§ 219.13 through 219.27." Among these resource management requirements is section 219.17, which requires that the wilderness value of certain roadless areas be assessed.[6] We agree with the Forest Service that Appendix C of the EIS adequately assesses the wilderness value of the two planning areas.
 
 
 34
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Appellant argues that the court erred in requiring him to submit evidence or affidavits in response to the government's motion for summary judgment. Appellant's Informal Brief, Attachment 8. He also argues that he was penalized by the district court's page limitation on responsive pleadings. Id
 We find no error. The court merely commented on the purely legal nature of the proceedings and did not penalize appellant for failing to put forward evidence. Memorandum Decision at 3. As to page limitations, requiring appellant to comply with a thirty-page limit in his responsive pleading was not an abuse of discretion, particularly given the fact that he was allowed the opportunity to make his case during oral argument before the court.
 
 
 [2]
 In general, the LRMP recognizes that recreation constitutes a major use of the Forest, and that use will increase significantly with the ever expanding urban populations that it serves. C.R., Ex. 8 at 3-3; 3-15; 3-16. The plan recognizes, however, that increased recreational use should be allowed "within the physical limits and resource capabilities of the Forest (not conflicting with higher priority land and water uses)," id. at 4-4, and that increased use is also limited by budgetary constraints, id., Ex. 10 at 4-47 ("The primary factors affecting recreation opportunities ... are budget limitations, the level of road and trail access, and restrictions placed on various activities and conflicts with other management activities, primarily range and wildlife."). Thus, it calls for a gradual increase in recreational areas. Id., Ex. 8 at 4-11; 4-26; see also id., Ex. 10 (EIS) at 2-124; 3-15. Specific plans for increasing recreational use, and alternatives to them, are included. Id. at 3-51; 4-47--4-51
 
 
 [3]
 The LRMP recognizes that livestock grazing is an historic practice on federal lands and that ranchers are economically dependent on the continued availability of grazing land within the Forest. Id., Ex. 8 at 4-11. As with recreational demand, the Service was confronted with a greater demand for grazing area than the Forest is capable of providing, and sought to accommodate that demand with the demands of competing users. Id. at 3-15
 
 
 [4]
 The conflict between grazing, recreational, and other uses is acknowledged at several points in the LRMP and EIS. While the LRMP does not contain an extensive discussion of the issues appellant raises (pollution of streams and aesthetic objections), the administrative record shows that the Service acknowledged the potential for conflict and planned steps to alleviate it. See id., Ex. 8 at 4-36 ("Livestock grazing will be concentrated in chaparral areas. Conflicts between grazing and wildlife management goals will be alleviated by fencing, water developments, or adjustments in the period of use to control livestock."); id, Ex. 10 (EIS) at 3-17 (discussing conflict between livestock and water supplies); id. at 3-47 ("The Forest presently manages grazing to complement and support other resource functions. Conflicts with other resources, when they occur, are solved strategically. For example, range improvements which draw concentrated livestock away from riparian areas and broadleaf woodlands; range improvements which provide forage improvements away from off-road vehicle areas; and buffers of older, denser brush stands prevent cattle trespass in some areas."); id. Ex. 11 (Appendix) at A-13 (explicitly discussing conflict between recreation, wildlife, and grazing)
 Thus, contrary to appellant's assertion, Appellant's Informal Brief, Attachment 7, at 6, the Forest Service considered the public health and safety consequences of allowing grazing in areas accessible to recreational users.
 
 
 [5]
 98 Stat. 1619, 1628-31
 
 
 [6]
 Section 219.17 provides in part,
 (a) Unless otherwise provided by law, roadless areas within the National Forest System shall be evaluated and considered for recommendation as potential wilderness areas during the forest planning process, as provided in paragraphs (a)(1) and (2) of this section.
 (1) During analysis of the management situation, the following areas shall be subject to evaluation:
 ....
 (iv) Areas designated by Congress for wilderness study....
 (2) For each area subject to evaluation under paragraph (a)(1) of this section, the determination of the significant resource issues, which in turn affect the detail and scope of evaluation required by the Forest Service, shall be developed with public participation. As a minimum, the evaluation shall include consideration of:
 (i) The values of the area as wilderness;
 (ii) The values foregone and effects on management of adjacent lands as a consequence of wilderness designation;
 (iii) Feasibility of management as wilderness, in respect to size, nonconforming use, land ownership patterns, and existing contractual agreements or statutory rights;
 (iv) Proximity to other designated wilderness and relative contribution to the National Wilderness Preservation System; and
 (v) The anticipated long-term changes in plant and animal species diversity, including the diversity of natural plant and animal communities of the forest planning area and the effects of such changes on the values for which wilderness areas were created. 36 C.F.R. § 219.17 (1990) (emphasis added).