LAKE MOHAVE BOAT OWNERS
ASSOCIATION, Plaintiff–
Appellant,

v.

NATIONAL PARK SERVICE; Alan
O'Neill; Stanley T. Albright; Seven Re-
sorts Inc.; Bruce Babbitt, Defendants–
Appellees.

No. 97–55400.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1998.

Decided March 6, 1998.

Before: FLETCHER, WIGGINS and
RYMER, Circuit Judges.

## ORDER

Roger N. Golden, Beverly Hills, CA, for plaintiff–appellant.

John F. Daly, Appellate Staff, Civil Div., Depart. of Justice, Washington, DC, for federal defendants–appellees.

Jerome A. Busch, Eric R. Brown, White & Resnick, Newport Beach, CA, for defendant–appellee.

Before: WALLACE, TROTT, and HAWKINS, Circuit Judges.

WALLACE, Circuit Judge:

In this case, we are asked to review an agency's approval of rates charged by a private concessioner operating a marina in a national park. The district court exercised jurisdiction under the Administrative Procedure Act, 5 U.S.C. §§ 551–559, and 28 U.S.C. § 1331. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291, and we affirm the district court's summary judgment.

## I

The National Park System Concessions Policy Act (Act), 16 U.S.C. §§ 20, 20a–g, authorizes the Secretary of the Interior (Secretary) to contract with private concessioners to provide services and facilities in national parks under the supervision of the National Park Service (Service). The Secretary is charged with regulating the rates charged by concessioners so as to provide them with a reasonable opportunity for profit. 16 U.S.C. § 20b(b).

In determining whether a concessioner's rates and charges are reasonable, the Secretary is to compare them "with those current for facilities and services of comparable character under similar conditions, with due consideration for length of season, provision for peakloads, average percentage of occupancy, accessibility, availability and costs of labor and materials, type of patronage, and other factors deemed significant by the Secretary." 16 U.S.C. § 20b(c).

Concessioner Seven Resorts, Inc. (Resort) contracted with the Service to provide services and facilities at Lake Mohave, which is part of the Lake Mead National Recreation Area. The facility at issue is the Resort's marina, which provides docking slips for houseboats and recreational boats. The Resort charges individual boat owners monthly docking fees based on the length of the boat or of the slip, whichever is longer.

On December 11, 1987, the Resort sought the Secretary's approval to raise the docking fees from $4.00 per foot to $5.50 per foot. The Secretary approved the rate increase in January 1988. Lake Mohave Boat Owners Association (Association), representing certain boat owners (Owners), opposed the rate increase on the ground that the Secretary's calculation of reasonable rates was procedurally and substantively flawed. Despite the Association's opposition, the Secretary refused a rate rollback in July 1989.

On October 10, 1990, the Resort requested a rate increase from $5.50 per foot to $6.00 per foot, which the Secretary approved in December 1990. The Resort requested another rate increase in 1992, to $6.25 per foot, but the Secretary denied that request.

As a result of a March 1994 preseason evaluation, the Secretary informed the Resort that the marina dock needed maintenance work, as there were loose nuts and separations between boards. By June of that year, the Resort had addressed these concerns and the Secretary approved its request for a rate increase to $6.25 per foot.

The Association filed this action in federal court in March 1990 on behalf of its members, seeking a rollback of rates to those of January 1, 1988, and restitution of all monies paid in excess of those rates. The district court, among other decisions, declared the rate increases invalid on the ground that the Secretary's failure to publish the Service's internal guidelines in the Federal Register violated the Owners' procedural due process

rights. The court granted the Association damages and restitution.

On appeal, we held that the Association could sue for prospective relief on behalf of its members, but lacked standing to bring a claim for restitution on their behalf. We also held that the Service was not required to publish its guidelines. We reversed and remanded for a determination of whether the Secretary acted arbitrarily or capriciously in approving the rate increases. *Lake Mohave Boat Owners Ass'n v. National Park Service,* 78 F.3d 1360, 1367 (9th Cir.1995). On remand, no order substituting or adding the Owners was entered. Rather, the Association filed a Third Amended Complaint in which the Owners were ostensibly treated as plaintiffs, an amendment unopposed and not subsequently objected to by the Service. The district court dismissed the Association, and entered summary judgment against the Owners, holding that there was no triable issue of fact that the Secretary had acted arbitrarily or capriciously.

## II

We review the district court's summary judgment de novo, which in this case means "that we view the case from the same position as the district court." *Marathon Oil Co. v. United States,* 807 F.2d 759, 765 (9th Cir.1986). We will uphold the Secretary's decision "unless it is determined to be arbitrary, capricious, an abuse of discretion, or contrary to law." *Id., citing* 5 U.S.C. § 706(2)(A). With this deferential standard of review in mind, we turn to the Owners' arguments.

The Owners first contend that, in approving the Resort's 1988, 1990, and 1994 rate increase requests, the Secretary acted arbitrarily and capriciously in violating four separate internal procedures: (1) changing the list of marinas in 1988 that it used against which to compare the Resort; (2) failing to index the rate increases in 1988; (3) converting "per slip" fees into "per foot" prices; and (4) abandoning the use of the "averaging" methodology. As to these issues, there is no material fact in dispute.

### A.

The Owners argue that in 1988 the Secretary disregarded marinas that had been deemed comparable the previous year. From 1978 to 1987, the Secretary relied on a 1978 survey of regional marina facilities for comparison purposes. By 1988, when the Resort requested a rate increase, the Secretary concluded that the 1978 survey had to be updated because a number of the marinas in that survey were no longer comparable to the Resort. There was no clear error of judgment on the part of the Secretary in disregarding marinas that are deemed no longer comparable. Therefore, we hold that the decision to disregard marinas that had been used previously but were no longer comparable was neither arbitrary nor capricious.

### B.

The Owners next contend that the Secretary's decision not to use "indexing" was arbitrary and capricious. The Service's manual (NPS–48) describes indexing as "an easily-implemented procedure for approving or adjusting concessioner prices on an interim basis." Contrary to the Owners' assertion, indexing was not the only method available to the Secretary in 1988. NPS–48 states, "The index pricing system should be understood to be a method of alleviating the burden of other pricing methods on both concessioner and [Service] personnel." Nothing in the manual indicates that the Secretary must use indexing in lieu of one of the other methods. We hold that the Secretary did not act arbitrarily or capriciously.

### C.

The Owners also assert that the Secretary's choice of boat length of 15 feet for converting "per slip" fees into "per foot" fees was arbitrary and capricious as it artificially inflated the "per foot" rate because the boats docked at the large slips range between 30 to 50 feet.

The Owners' assumption is factually incorrect. The marinas that charged a "per slip" fee charged a different fee depending on the length of the boat. The Secretary took this

scaled rate schedule into account in converting the "per slip" fees into "per foot" fees and used the 15 foot hypothetical boat only for slips up to that size. We hold that the Secretary's conversion was neither arbitrary nor capricious.

### D.

■ Finally, the Owners contend that the Secretary's decision to use the comparable rates as a range, rather than as an arithmetic average, was arbitrary and capricious. Rather than allow the Resort to charge the average rate of those charged by the comparable facilities, the Service determined an acceptable rate within the range charged by the other facilities. This range spanned from $3.50 per foot to $6.50 per foot, encompassing the $6.25 rate that the Secretary approved.

■ An agency's deviation from its own guidelines is not per se arbitrary or capricious. *See, e.g., United States v. Caceres,* 440 U.S. 741, 754 n. 18, 99 S.Ct. 1465, 1473 n. 18, 59 L.Ed.2d 733 (1979); *Alaska Factory Trawler Ass'n v. Baldridge,* 831 F.2d 1456, 1464 (9th Cir.1987). The record indicates that the Secretary found that averaging would not lead to an accurate comparison rate, because averaging assumed that each facility was equally similar to the Resort. It is undisputed that instead, the Secretary recognized that none of the comparable facilities was exactly similar and that the Resort's facilities were more comparable to the facilities at the high end of the range. In other circumstances, we have approved of the use of ranges, rather than bright-line figures, to take into account measurement error. *See Officers for Justice v. Civil Service Commission,* 979 F.2d 721, 727–28 (9th Cir.1992). The Secretary's decision to do so in this case was neither arbitrary nor capricious.

### III

■ The Owners' second major argument is that the Secretary acted arbitrarily and capriciously in approving the rate increases without taking into account pollution levels at the lake. An agency acts arbitrarily and capriciously "if the agency has ... entirely failed to consider an important aspect of the problem." *Dioxin/Organochlorine Center v. Clarke,* 57 F.3d 1517, 1525 (9th Cir.1995), *quoting Arkansas v. Oklahoma,* 503 U.S. 91, 113, 112 S.Ct. 1046, 1060, 117 L.Ed.2d 239 (1992). Was the pollution level at the Resort an "important" aspect of a rate increase? We determine the importance of a problem by determining what the statute in question makes "important." *Oregon Natural Resources Council v. Thomas,* 92 F.3d 792, 798 (9th Cir.1996).

■ The Act charges the Secretary with determining a reasonable profit for the concessioner. 16 U.S.C. § 20b(b). In doing so, the Secretary is to consider a host of factors, such as "length of season, provision for peak-loads, average percentage of occupancy, accessibility, availability and costs of labor and materials, type of patronage, and other factors deemed significant by the Secretary." 16 U.S.C. § 20b(c). The Act does not mention protection of the environment. This should not be surprising as the Act focuses on an economic issue: what is a reasonable profit for a concessioner. Unless the water condition at the time of the Secretary's decision affected that issue, it is not an "important" problem to be considered.

In *Mount Diablo Hospital v. Shalala,* 3 F.3d 1226, 1232 (9th Cir.1993), we held that the Secretary had not acted arbitrarily or capriciously in not factoring the use of part-time workers into the wage index, where the record showed that "[a] relatively insignificant percentage of the comments received ... were directed at the part-time worker issue." The record in this case reflects a paucity of evidence that any pollution problems were of such magnitude that the Secretary should have taken them into account in setting rates. Although owner Mary Wall, as Association President, did contest the 1994 rate increase, her complaints seem to be directed at the approval process, and not at environmental concerns. The Arizona State Attorney General's investigation of the environmental conditions at the lake does not assist the Owners. It occurred in October 1994, after the Secretary had approved the most recent rate increase request.

· No material fact is in dispute. The record does not show that the Secretary, to the

extent he did not take water pollution into account in approving rate increases, made a clear error of judgment. We therefore hold that the Secretary did not act arbitrarily or capriciously.

Our conclusion that the Secretary's decisions were not arbitrary or capricious is dispositive of the remaining issues, and thus we do not reach whether the Resort was entitled to rely on the Secretary's approval of the rate increase or whether the district court erred in determining for summary judgment purposes that the Secretary did consider water pollution levels.

AFFIRMED.