948 F.2d 568
 22 Envtl. L. Rep. 20,018
 SIERRA CLUB, a California non-profit corporation; Committee
for Green Foothills, a non-profit corporation; Committee
for the Permanent Repair of Highway One, an unincorporated
association; Tyler Ahlgren; Dana Denman, Plaintiffs-Appellees,
v.
DEPARTMENT OF TRANSPORTATION, Elizabeth Dole, in her
official capacity as Secretary of the U.S. Department of
Transportation; Federal Highway Administration; Ray A.
Barnhart, in his official capacity as Administrator of the
Federal Highway Administration, Defendants-Appellants,
and
California Department of Transportation, an agency of the
State of California, et al., Defendants.
SIERRA CLUB, a California non-profit corporation; Committee
for Green Foothills, a non-profit corporation; Committee
for the Permanent Repair of Highway One, an unincorporated
association; Tyler Ahlgren; Dana Denman, Plaintiffs-Appellees,
v.
DEPARTMENT OF TRANSPORTATION, Elizabeth Dole, in her
official capacity as Secretary of the U.S. Department of
Transportation; Federal Highway Administration; Ray A.
Barnhart, in his official capacity as Administrator of the
Federal Highway Administration, Defendants,
and
California Department of Transportation, an agency of the
State of California, California Transportation
Commission, Joe Levy, Defendants-Appellants.
SIERRA CLUB, a non-profit corporation; Committee for Green
Foothills, a non-profit corporation; Committee for the
Permanent Repair of Highway One, an unincorporated
association, Plaintiffs-Appellants,
v.
UNITED STATES DEPARTMENT OF TRANSPORTATION; Elizabeth Dole,
in her official capacity as Secretary of the U.S. Department
of Transportation; Federal Highway Administration, Ray A.
Barnhart, in his official capacity as Administrator of the
Federal Highway Administration; California Department of
Transportation, an agency of the State of California, et
al., Defendants-Appellees.
 Nos. 90-15751, 90-15754, 90-15826.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 19, 1991.
Decided Oct. 30, 1991.
 
 Martin Matzen, U.S. Dept. of Justice, Washington, D.C. and Norval Fairman, San Francisco, Cal., for defendants-appellants, defendants-appellees.
 Robert M. Teets, Jr. and Maribeth Halloran, Alan Moss, San Francisco, Cal., for plaintiffs-appellees.
 Christine Motley, Deputy County Counsel, Redwood City, Cal., for amicus.
 Appeal from the United States District Court for the Northern District of California.
 Before CHOY, ALARCON and T.G. NELSON, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 In this case we decide that a road does not "constructively use" a park if the road and park were jointly planned.
 
 I. Factual and Procedural Background
 
 2
 The history of this case is long and complicated. The district court's published opinion, Sierra Club v. United States Department of Transportation, 695 F.Supp. 460 (N.D.Cal.1988), contains an extensive review of the factual and procedural history of this case. We summarize only the background information necessary to decide the questions presented to us.
 
 
 3
 Since California State Highway Route 1 was constructed in 1937, landslides have repeatedly closed a 600 foot section of this highway called "Devil's Slide." The California Division of Highways studied alternatives for roads that would bypass this portion of Highway 1 as early as 1958. In 1960, the California Highway Commission approved a bypass route that became known as the "adopted alignment alternative." Between 1969 and 1972 the California Department of Transportation (CalTrans) acquired fifty-five percent of the right-of-way needed for the adopted alignment alternative. Due to litigation and lack of funding, efforts to construct the bypass stopped in 1975.
 
 
 4
 In the late 1970s, the California Department of Parks and Recreation (DPR) began negotiations to purchase lands on both sides of the adopted alignment alternative, and in 1984 this land, McNee Ranch State Park, was turned over to the DPR to administer as part of the state park system. Land that CalTrans believed might be necessary for a bypass but that it had not yet acquired was deliberately excluded from the parcel of land that was to form the park.
 
 
 5
 In 1983, after Route 1 was extensively damaged in the Devil's Slide area, federal funds became available, and CalTrans began moving forward with plans for a bypass road. In the process of obtaining approval for a bypass road from various state agencies, CalTrans adopted a new plan for a bypass road called the "Martini Creek" alternative. In 1986, the Secretary of the Department of Transportation (Secretary) approved the Final Environmental Impact Statement and the Plans, Specifications and Estimates (PS & E) for the Martini Creek bypass road. Approval of the PS & E obligated about $47 million in federal funds for the project.
 
 
 6
 On January 12, 1987, the district court enjoined construction of the Devil's Slide bypass road on the basis of a preliminary determination that the Secretary had failed to comply with section 4(f) of the Department of Transportation Act of 1966 and section 18 of the Federal Highway Act of 1968.[1] Sierra Club v. United States Dep't of Transp., 664 F.Supp. 1324, 1327-34 (N.D.Cal.1987). On July 7, 1988, the district court entered partial summary judgment in favor of the Sierra Club[2] on the section 4(f) issue thus enjoining construction of the bypass road until the Secretary completed a section 4(f) study. Sierra Club v. United States Dep't of Transp., 695 F.Supp. 460 (N.D.Cal.1988). The district court held that the planned bypass road constructively used the McNee Ranch Park, and thus a section 4(f) study was necessary to determine if any "prudent and feasible alternative to using" park land existed. The court adopted the state of the park without any road as the baseline to determine whether there was constructive use. The district court held that as to the constructive use inquiry, it would make no difference whether the road and park had been jointly planned, or if the road was built next to an established park. Id. at 466. On April 10, 1990, the district court entered "final judgment" on the section 4(f) claim, deferred consideration of the Sierra Club's claim that the federal funding for a Devil's Slide bypass road should lapse, and held that the federal funds would remain obligated until it considered the funding issue after remand from the Ninth Circuit or the completion of a section 4(f) study.
 
 
 7
 On appeal the Department of Transportation (DOT)[3] claims that the district court erred in holding that a section 4(f) study was required. The DOT claims that the planned bypass road did not constructively use park land because the road and park were jointly planned.
 
 
 8
 The DOT claims that there was extensive cooperation between CalTrans and the park planners throughout the process of park acquisition and road alignment. The Sierra Club disputes this claim. The district court did not resolve this factual dispute because it rejected the DOT's legal argument that if there was joint planning there was no constructive use.
 
 
 9
 The Sierra Club claims in its cross-appeal that the district court erred in holding that the federal funds should remain obligated, pending further consideration, after it found that the Secretary had failed to comply with the requirements of section 4(f).
 
 II. Jurisdiction
 
 10
 The district court permanently enjoined the Secretary from funding the Devil's Slide project until the Secretary completed a section 4(f) study. Under 28 U.S.C. § 1292(a)(1) the panel has jurisdiction to review this order because it is "continuing ... or refusing to dissolve or modify [an] injunction[ ]." The propriety of this injunction turns on whether the district court correctly entered partial summary judgment on the section 4(f) issues. Thus the panel has jurisdiction over the DOT's appeals. See Marathon Oil Co. v. United States, 807 F.2d 759, 763-65 (9th Cir.), cert. denied, 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1986).
 
 
 11
 We cannot find a ground for asserting jurisdiction over Sierra Club's cross-appeal on the funding issue, however. The district court's order granted only a partial summary judgment in favor of Sierra Club. The court explicitly declined to resolve the funding issue until this panel ruled on the section 4(f) issue or the DOT complied with its order. District Court Order at 14-15 (filed April 3, 1990). Thus, the district court's order with respect to the obligation of federal funds is not "final" within the meaning of 28 U.S.C. § 1291 and is therefore not appealable.
 
 
 12
 Sierra Club maintains, however, that the district court failed to make an "express determination that there is no just reason for delay" in entering judgment on the section 4(f) claims as required by Fed.R.Civ.Proc. 54(b). Without such a determination, the order is not final and thus not appealable. See Frank Briscoe Co. v. Morrison-Knudsen Co., 776 F.2d 1414, 1416 (9th Cir.1985). Sierra Club asserts, therefore, that the district court's order must be construed as a final order under Rule 54(a), allowing an appeal of the funding issue as well as the section 4(f) issues.[4] The finality of the district court's order cannot rest upon Rule 54(a) because the summary judgment covered only some claims. See 6 James W. Moore, Federal Practice p 54.34, at 54-210 (2d ed.1991) (a partial judgment "does not constitute a judgment under Rule 54(a), and is not appealable, unless it is entered as a judgment in compliance with Rule 54(b)"). Moreover, a final judgment on all of the claims would have to comply with Rule 58's requirements, something the district court declined to do. District Court Order at 13, 14-15 (filed April 3, 1990).
 
 
 13
 Sierra Club argues that the panel should assert jurisdiction under the doctrine of "practical finality" because they will suffer irreparable harm. See Stone v. Heckler, 722 F.2d 464, 467 (9th Cir.1983). Sierra Club asserts that the objectivity of the section 4(f) study will be compromised if the funding remains obligated. We find this argument unpersuasive. First, the DOT has no particular interest in allocating funds to the Martini Creek bypass project; if the funds are not spent here they will be spent on another project. It is the state agencies that have an interest in keeping the funds, but they are not conducting the section 4(f) study. Sierra Club's assertion that the Secretary has already concluded that the alternatives are "imprudent" does not prove that keeping the funds obligated to the Martini Creek alignment will create a bias. Second, administrative review of the Secretary's findings provides an adequate check against institutional bias. If that proves inadequate, there is always recourse to the federal courts. We are satisfied that institutional safeguards will prevent the DOT from acting in an improper fashion.
 
 
 14
 This reasoning also applies to Sierra Club's claim that the district court's order is the equivalent of an affirmative injunction that is reviewable under the test set forth in Carson v. American Brands, Inc., 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). The Carson test requires that the order have a " 'serious, perhaps irreparable consequence,' and that the order can be 'effectually challenged' only by immediate appeal." Id. at 84, 101 S.Ct. at 997 (citation omitted). As explained above, there are no such consequences here. Moreover, Sierra Club may challenge the district court's ruling on the funding issue after remand.
 
 
 15
 Finally, Sierra Club asserts that the district court's order is an interlocutory order modifying an injunction and is therefore reviewable under section 1292(a)(1). This hypertechnical argument flies in the face of the district court's explicit statement that it intended to defer the funding issue and the court's refusal to grant either party's motion on the issue.
 
 III. Standard of Review
 
 16
 We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the trial court correctly applied the relevant substantive law. Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 17
 Where a statute is ambiguous a reviewing court will defer to the interpretation of the agency charged with implementing the statute. Young v. Community Nutrition Instit., 476 U.S. 974, 980, 106 S.Ct. 2360, 2364, 90 L.Ed.2d 959 (1986). A court does not, however, defer to the post hoc rationalizations of an agency's counsel when the agency itself has taken no position prior to the pending litigation. Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988). The degree of deference to an agency's interpretation turns on the manner in which the agency advances its interpretation. Martin v. Occupational Safety and Health Review Comm'n, --- U.S. ----, 111 S.Ct. 1171, 1179, 113 L.Ed.2d 117 (1991). In this case we need not determine the degree of deference owed, if any, to the Secretary's position because, an entirely non-deferential review reveals that her position is correct. Consequently we need not confront such difficult questions as whether the Secretary's recently enacted regulations defining constructive use, see 23 C.F.R. 771.135(p), apply to this case. Cf. Kaiser Aluminum & Chemical Co. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (Supreme Court cases on presumption of applicability of regulations to events occurring prior to enactment of regulations apparently conflict).
 
 IV. Discussion
 
 18
 If a planned road will use park land, and if the state will use federal funds to construct that road, then section 4(f) requires that the road be relocated unless is no prudent and feasible alternative exists. 49 U.S.C. § 303(c)(1). The Ninth Circuit has interpreted this provision to apply to constructive use as well as actual use of park land. In this circuit, constructive use of park land occurs when a road significantly and adversely affects park land even though the road does not physically use the park. Adler v. Lewis, 675 F.2d 1085, 1091-92 (9th Cir.1982).
 
 
 19
 In this appeal, the DOT asks us to decide that where the construction of a new road and a new park are jointly planned on a single parcel of land, the road does not constructively use the park land. The issue before us is essentially a question of statutory interpretation. We must interpret the word "use" in section 4(f) in light of joint planning. Though we look first to the actual language of section 4(f), careful attention to the purposes and legislative history of the section is important to a correct interpretation. See Public Citizen v. United States Dep't of Justice, 491 U.S. 440, 109 S.Ct. 2558, 2565-67, 105 L.Ed.2d 377 (1989) (interpreting "utilizes" in Federal Advisory Committee Act).
 
 
 20
 A. Statutory Language.
 
 
 21
 The district court found that the statute made no explicit exemption for joint planning. This is technically true, but the DOT's claim is merely that the Secretary may consider joint planning as a factor in deciding whether a road constructively "uses" a park. The question therefore is the intended meaning of the word "uses" and not the language that the district court focused upon.
 
 
 22
 The court in Adler, 675 F.2d at 1092 (emphasis added) interpreted the word "use" in section 4(f) to apply to roads that would "substantially impair the value of the site in terms of its prior significance and enjoyment." Though not dispositive, this reading suggests that section 4(f) applies when a road or other off-site activity encroaches upon an existing park, rather than a park that is created with a road.
 
 
 23
 The district court avoided this conclusion by evaluating the park as it would have existed without the road. Thus we turn to the legislative history to determine what Congress intended section 4(f) to reach.
 
 
 24
 B. Legislative History.
 
 
 25
 Section 4(f) provides, inter alia, "The Secretary of Transportation shall cooperate and consult with ... the States, in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of lands crossed by transportation activities or facilities." 49 U.S.C. § 303(b). Since highway construction often spurs other development in its wake, one way to accomplish section 4(f)'s goals is through the joint planning and development of parks and roads. The Sierra Club claims, however, that no evidence suggests that Congress contemplated such joint development. Our review of section 4(f)'s legislative history has uncovered evidence that Congress did contemplate joint development of parks and roads when it considered section 4(f).
 
 
 26
 First, Congress was concerned that roads and other infrastructures would encroach upon the beauty of existing parks. One report stated that section 4(f) is
 
 
 27
 designed to insure that in planning highways ... and other transportation facilities, care will be taken ... not to interfere with or disturb established recreational facilities and refuges.
 
 
 28
 S.Rep. No. 1659, 89th Cong., 2d Sess. 5-6 (1966). Second, there is some evidence that joint planning was viewed as desirable. The Public Works Committee expressed its view that: "More productive land use is assured by joint development because a single strip of land is utilized not only for highway construction, but also for simultaneous planning and building of such complementary facilities as ... parks...." S.Rep. No. 1340, 90th Cong., 2d Sess., reprinted at 1968 U.S.Code Cong. & Admin.News 3482, 3489. Though this statement was made in the context of addressing problems of urban highway development, it also stands for the proposition that Congress, at the time it passed section 4(f), thought that joint planning of roads and parks was desirable. This legislative history rejects the district court's baseline that a nonexistent park should be evaluated as if it existed without any road. Congress apparently considered jointing planning a legitimate urban planning strategy, but felt that the survival of existing park land should be ensured.
 
 
 29
 C. Practical Considerations.
 
 
 30
 Read as a whole, section 4(f) is meant to discourage a new road where the community has already decided a park should exist. Section 4(f) accomplishes this objective by withholding federal funding from such a road. Section 4(f) is not meant to force upon a community, wishing to establish a less than pristine park affected by a road, the choice between a pristine park and a road. A community faced with this choice might well choose not to establish any park, thus frustrating section 4(f)'s goal of preserving the natural beauty of the countryside. If the community does not create a park when the road is initially constructed, pressure for more intensive land use, made feasible by construction of the road, may prevent creation of any park at all. As the DOT notes, the construction of infrastructure may make the land commercially valuable and increase land prices, further discouraging creation of park land once the road is built. Thus the result urged upon us by the Sierra Club creates perverse incentives that would do little to protect the beauty of undeveloped land.[5]
 
 
 31
 Joint planning would be extremely difficult if section 4(f) is read to require that a road that is jointly planned with a park must be relocated unless no "prudent and feasible alternative" exists. Whenever a park, by virtue of its proximity to a jointly planned road, is "constructively used" by the road, the road would have to be rerouted unless no other prudent and feasible alternative exists. Conceivably, joint planning might still be possible but the development of the park would have to be delayed until the Secretary has "approved" the road.[6] Such delay would postpone the public's enjoyment of the park for no good reason.
 
 
 32
 When a proposed road is found to constructively use an existing park, the proposed road's effect upon the existing park is made against the background of prior judgments about the type of park that the community and state wanted and the proximity of roads to that park. The construction of a road that would adversely and significantly affect the park would abruptly change the community consensus about the appropriate use of the land. Congress intended section 4(f) to apply in such a situation. Where a park and road are jointly planned on land which previously had neither park nor road, however, no consensus is being upset. The community is not changing its mind about the type of park and road it would have, but is making that determination in the first instance. It is difficult to see, therefore, how the road would significantly and adversely affect the park.
 
 
 33
 In light of Congress's contemplation of joint planning at the time it considered section 4(f); the sensibility of joint planning to achieve section 4(f)'s goal of preserving the natural beauty of lands crossed by highways; and the difficulty of conducting joint planning if section 4(f) is interpreted as the district court believed it should be; we believe that the best reading of section 4(f) is that there is no constructive use of park land where a road and park are jointly planned.[7]
 
 V. Conclusion
 
 34
 Because the district court rejected the DOT's legal argument, it did not resolve the disputed factual issue of whether the road and park were jointly planned. We REVERSE the district court's interpretation of section 4(f) and REMAND for a factual determination as to whether the road and park were jointly planned. We DISMISS the cross-appeal for lack of jurisdiction.
 
 
 
 [1]
 Section 4(f) is codified at 49 U.S.C. § 303. It was formerly codified at 49 U.S.C. § 1653(f). Section 18 of the Federal Highway Act is codified at 23 U.S.C. § 138. Section 4(f) is substantially identical to § 18. We refer to both statutes as § 4(f), as did the district court. Section 4(f) states:
 (a) It is the policy of the United States Government that special effort should be made to preserve the natural beauty of the country-side and public park and recreation lands, wildlife and waterfowl refuges, and historic sites.
 (b) The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development, and Agriculture, and with the States, in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of lands crossed by transportation activities or facilities.
 (c) The Secretary may approve a transportation program or project (other than any project for a park road or parkway under section 204 of title 23) requiring the use of publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance, or land of an historic site of national, State, or local significance (as determined by the Federal, State, or local officials having jurisdiction over the park, area, refuge, or site) only if--
 (1) there is no prudent and feasible alternative to using that land; and
 (2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use.
 49 U.S.C. § 303.
 
 
 [2]
 The plaintiffs in this case are the Sierra Club, Committee for Green Foothills, Committee for Permanent Repair of Highway One, and nearby land owners Tyler Ahlgren and Dana Denman. We refer to all the plaintiffs as the Sierra Club. The positions taken by all the plaintiffs in this litigation are the same with the exception that Tyler Ahlgren and Dana Denman do not argue that the federal funding should lapse because of the Secretary's failure to comply with section 4(f)
 
 
 [3]
 The defendants in this action are the federal and state agencies listed in the caption of this case. The positions taken by these agencies in this appeal are substantially similar. We refer to all defendants as the DOT
 
 
 [4]
 We need not decide whether the district court's technical failure to make the express determination required by Rule 54(b) thwarts this court's jurisdiction over the other claims because jurisdiction exists under § 1292(a)(1). Moreover, compliance with Rule 54(b) is irrelevant to jurisdiction on the funding issue. Because the district court explicitly refused to adjudicate the funding claim, a perfectly valid certification under Rule 54(b) would not make the district court's order on this issue final. The issue is thus not ripe for review. See Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)
 
 
 [5]
 A community might also choose the park, but barring the "joint planning defense" creates a unique disincentive to preserving the natural beauty of the countryside where the demand for the road is far greater than the community support for a park. In such cases, the community would simply plan and build the road first in order to avoid section 4(f)'s requirements and then consider building a park. No incentive to abandon the park exists when constructive use is applied to the effect of a road on an established park
 
 
 [6]
 The length of this delay is uncertain. The Secretary must "approve" not only the PS & E but also each construction contract and the actual construction. Arlington Coalition on Transp. v. Volpe, 458 F.2d 1323, 1334-35 (4th Cir.), cert. denied, 409 U.S. 1000, 93 S.Ct. 312, 34 L.Ed.2d 261 (1972)
 
 
 [7]
 We emphasize that our holding still provides that section 4(f) is applicable to jointly planned projects. The broader provisions of section 4(f) apply to all lands, not just "used" park lands. Section 4(f) requires the Secretary to cooperate with other federal agencies and the States in developing measures to maintain or enhance the natural beauty of lands crossed by transportation facilities. 49 U.S.C. § 303(b). This requirement insures that highway development involves careful attention to preservation of the nation's undeveloped lands
 Moreover, we only recognize the joint planning defense with respect to constructive, not actual use of park land.