IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-3154

_____

IN THE MATTER OF:  MAGNOLIA MARINE
TRANSPORT CO., INC.
MISSISSIPPI MARINE TRANSPORT COMPANY,

                              Third Party Plaintiff,

                    versus

LAPLACE TOWING CORPORATION, ET AL.,

                              Third Party Defendants,

BARBARA BORDELON FRYE and
E.N. BISSO & SONS, INC.,

                              Claimants-Appellants,

                    versus

MAGNOLIA MARINE TRANSPORTATION, INC., ET AL.,

                              Defendants-Appellees.

                    * * * * *

MAGNOLIA MARINE TRANSPORTATION, ET AL.,

                              Plaintiffs-Appellees,

                    versus

BARBARA BORDELON FRYE, ETC., and
E.N. BISSO & SONS, INC.,

                              Defendants-Appellants.

_____

Appeals from the United States District Court for
          the Eastern District of Louisiana
_____

(June 25, 1992)

Before REAVLEY, HIGGINBOTHAM and DEMOSS, Circuit Judges.

REAVLEY, Circuit Judge:

The district court has decided that the underwriters of a vessel owner's marine insurance policy has standing under the Limited Liability Act to demand that the federal court interpret whether the policy limited the underwriters' liability to the amount of the owner's liability. The district court then refused to permit claimants to proceed in state court against the owner and underwriters without specifically conceding the right of the underwriters to litigate policy interpretation in the admiralty court. The district court consequently stayed prosecution of claims against the shipowner and the underwriters in the state court, and declined to dismiss the underwriters' declaratory judgment suit. We hold that underwriters may not require this federal accommodation, and that limitation of liability protects only the shipowner.

## I. BACKGROUND

On February 3, 1988, on the Mississippi River south of Baton Rouge, the M/V SAM LEBLANC collided with a barge in tow of the M/V ERGONOT and then with a second vessel. Captain Joseph Frye, master of the SAM LEBLANC, drowned as a result of this accident. On February 17, 1988 Barbara Frye (Frye), the captain's widow, sued E.N. Bisso & Son, Inc. (Bisso), her late husband's employer, in Louisiana state court. She soon joined as a defendant in that action Magnolia Marine Transport Co., Inc. (Magnolia), owner of

2

the ERGONOT and owner *pro hac vice* of a barge that struck the SAM LEBLANC. She later joined Magnolia's marine insurance underwriters in a direct action under Louisiana law. Magnolia filed its suit in admiralty to limit liability in the federal district court in August 1988, and Frye and Bisso timely filed claims. The district court set the limitation trial for August 27, 1990. The Louisiana court set Frye's suit for trial on February 19, 1991.

On August 22, 1990 the federal court stayed the limitation action pending the resolution of Frye's state-court suit. Two days later, after Frye had notified the court that she planned to file a direct action in state court, Magnolia and its underwriters filed a declaratory judgment suit in the same federal district court seeking a declaration that Magnolia's underwriters are entitled to limitation of liability under *Crown Zellerbach Corp. v. Ingram Indus., Inc.*, 783 F.2d 1296 (5th Cir.), *cert. denied*, 479 U.S. 821 (1986). The declaratory judgment suit was consolidated with the limitation suit. Pursuant to the motions of Frye and Bisso to stay or dismiss the declaratory judgment suit, the court considered whether the insurers were entitled under Magnolia's policy to limit their liability to Magnolia's liability.

In January 1991, one month before the scheduled state-court trial date, the district court ruled that the interpretation of Magnolia's insurance policy is "necessarily a function of" the limitation suit, and that moving ahead with the federal

3

declaratory judgment suit would not jeopardize Frye's right to common law remedies under the saving-to-suitors clause. *Magnolia Marine Transport Co. v. Frye*, 755 F.Supp. 149, 152 (E.D. La. 1991). The court also found the stipulations of Frye and Bisso defective for failing to protect Magnolia's underwriters and to concede that the federal court is the only proper forum to determine whether the underwriters policy permits them to limit liability to the shipowner's liability. *Id.* at 152-53. The court enjoined the state-court trial of claims against Magnolia and its underwriters and denied the claimants' motion to dismiss the declaratory judgment suit. *Id.*

## II. DISCUSSION

The Limited Liability Act, 46 U.S.C. §181 et seq. (the Act, or the Limitation Act), provides that the liability of a shipowner for any damage arising from a maritime casualty which is occasioned without the privity or knowledge of the shipowner shall not exceed the value of the vessel at fault together with her pending freight. 46 U.S.C. §183(a). Federal courts have exclusive admiralty jurisdiction of suits brought under the Act, but "saving to suitors . . . all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333. This statutory framework has created "recurring and inherent conflict" between the saving-to-suitors clause of §1333, with its "presumption in favor of jury trials and common law remedies," and the "apparent exclusive jurisdiction" vested in admiralty courts by the Act. *In re*

4

*Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836
F.2d 750, 754 (2d Cir. 1988).

When a shipowner files a federal limitation action, the
limitation court stays all related claims against the shipowner
pending in any forum, and requires all claimants to timely assert
their claims in the limitation court. *Id.* at 755. The court
takes jurisdiction to entertain those claims without a jury,
*Waring v. Clarke*, 46 U.S. (5 How.) 441, 458-60, 466, 12 L.Ed. 226
(1847), and ensures that the shipowner who is entitled to
limitation is not held to liability in excess of the amount
ultimately fixed in the limitation suit (the limitation fund).
*Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152-53, 77 S.Ct. 1269,
1272 (1957). The court's primary concern is to protect the
shipowner's absolute right to claim the Act's liability cap, and
to reserve the adjudication of that right in the federal forum.
*Langnes v. Green*, 282 U.S. 531, 543, 51 S.Ct. 243, 247 (1931).

*Lake Tankers* makes "crystal clear" that the Act is directed
at maritime misfortunes where the losses claimed exceed the value
of the vessel and freight. 354 U.S. at 151, 77 S.Ct. at 1272.
Where the claim does not exceed that value, the saving-to-suitors
clause dictates that the admiralty court *must* allow suits pending
against the shipowner in a common law forum, in this case the
state court, to proceed. *Id.*, at 150-54; 77 S.Ct. at 1271-73;
*Dammers & Vanderheide*, 836 F.2d at 755. But even when the claim
does exceed that value, the claimant still may prefer the state
court, for example if the claimant possesses a related claim

5

against a party who is not protected by the Act. *See, e.g., In re Complaint of McDonough Marine Service, Div. of Marmac Corp.*, 749 F.Supp. 128, 130 (E.D. La. 1990) (claim against barge manufacturer). Consequently, the claimant may decide to reduce the claim pending against the shipowner in the admiralty court to the value of the limitation fund.

The claimant who wishes to pursue a state court claim in this manner must first make certain stipulations in the admiralty court to preserve the shipowner's rights. The claimant must stipulate that the admiralty court reserves exclusive jurisdiction to determine all issues related to the shipowner's right to limit liability, and that no judgment against the shipowner will be asserted to the extent it exceeds the value of the limitation fund. Upon the claimant's filing sufficient stipulations, the admiralty court should allow the claimant to proceed even when the claim exceeds the limitation fund. *Langnes*, 282 U.S. at 540-41, 51 S.Ct. at 247; *In Re Two "R" Drilling Co.*, 943 F.2d 576, 578 (5th Cir. 1991).

When the shipowner is beset by multiple claimants, admiralty courts also are concerned that there be one federal forum for the resolution of all *competing* claims. *See In re Complaint of Midland Enterprises, Inc.*, 886 F.2d 812, 815 (6th Cir. 1989). But even in multiple-claimant cases, admiralty courts still should allow state court claims to proceed under proper stipulations. *See Dammers & Vanderheide*, 836 F.2d at 755-60. Multiple claimants may reduce their claims to the equivalent of a

single claim by agreeing and stipulating as to the priority in which the claimants will receive satisfaction against the shipowner from the limited fund. *S&E Shipping Corp. v. Chesapeake & O. R. Co.*, 678 F.2d 636, 644 (6th Cir. 1982). Under such stipulations, "the state court proceeding could have no possible effect on the [shipowner's] claim for limited liability in the admiralty court . . . ." *Lake Tankers*, 354 U.S. at 152-53, 77 S.Ct. at 1272-73. In that circumstance, "the provisions of the Act . . . do not control. *Id*.

7

Frye and Bisso filed stipulations in this case,[1] and Appellees Magnolia and its underwriters do not contest that these stipulations adequately protect Magnolia's interests.  Rather, the underwriters urge that the stipulations are incomplete because the claimants failed to concede the underwriters' right to litigate their liability in the limitation action.  The underwriters further contend that the federal court has exclusive jurisdiction to interpret their marine insurance policy.  The district court agreed with the underwriters' arguments, and therefore decided to lift the stay of the limitation suit,

---

[1]  The claimants filed the following stipulations:
1.    Claimants stipulate that in the event there is judgment(s) in any state court actions, in excess of $230,000, which is the value that . . . Magnolia has placed on the limitation fund, plus pending freight, in no event will the claimants, separately or together, execute or enforce any judgment(s) insofar as same would expose Magnolia to liability in excess of $230,000, plus pending freight.
2.    Claimants concede that this court has exclusive jurisdiction to determine Magnolia's statutory right, as vessel owner or owner pro hac vice, to exoneration from or limitation of liability under 46 U.S.C. § 183 et seq., and, relatedly, the proper value of the limitation fund.
3.    Claimants waive res judicata with respect to all claims relating to the issue of Magnolia's statutory right of exoneration from or limitation of liability, based on any judgment(s) in state court.
4.    Claimants stipulate that the claim of E.N. Bisso & Son, Inc. shall have irrevocable priority over all other claims.
5.    Claimants stipulate that Barbara Bordelon Frye's claim shall have irrevocable priority over all other claims, once E.N. Bisso & Son's claim is satisfied.
6.    Claimants specifically reserve their right to challenge in this court the value of the limitation fund, which Magnolia has averred is $230,000, plus pending freight.

8

proceed with the declaratory judgment suit, and enjoin the claimant's state court suit against Magnolia and the underwriters.

A.    THE ADMIRALTY PROCEEDING AND THE UNDERWRITERS

We first note that the Act itself affords the underwriters no right of limitation. *Maryland Casualty Co. v. Cushing*, 347 U.S. 409, 421-22, 433, 74 S.Ct. 608, 615 *(1954). See also* 3 Benedict on Admiralty § 45 at 5-37 (December 1989) (only "owner" or "charterer" may limit liability). Therefore, the underwriters have no statutory basis to demand shelter in the claimants' stipulations which are required to protect the shipowner's rights. *Two "R" Drilling*, 943 F.2d at 578; *Dammers & Vanderheide*, 836 F.2d at 756-57. A maritime insurer's right to limit its liability depends upon the terms of its contract of insurance.

> The district court stated its opinion that the
>
> claimants cannot stipulate that their claims do not exceed the value of Magnolia Marine's vessel without also applying that stipulation to Magnolia Marine's insurers . . . [and] a resolution of the policy language in favor of the insurers would mean those insurers have the *same standing to limit their liability as do their assureds*.

*Magnolia Marine*, 755 F.Supp. at 152-53 (footnote omitted) (emphasis added). The district court erroneously assumed that a liability-limiting term in a marine insurance policy gives the underwriters standing under the Act to assert limitation

9

defensively and require protective stipulations from claimants.[2] Because the underwriters' rights are purely contractual, and the validity of the liability-limiting term in the policy at issue is disputed, the underwriters are not entitled to a stipulation in their favor. Only if the disputed term were already adjudicated in their favor could the underwriters colorably demand such a stipulation, based on the judgment interpreting the policy and not on the Act.

The underwriters also argued below that they are entitled to a federal forum for interpretation of the alleged liability-limiting term of Magnolia's insurance policy. On appeal, the underwriters repeatedly refer to the *exclusive* jurisdiction of federal courts to interpret marine policies. It is true that admiralty jurisdiction encompasses issues arising from marine insurance contracts. *Insurance Co. v. Dunham*, 78 U.S. (11 Wall.) 1, 24, 20 L.Ed. 90, 97 (1871); *Offshore Logistics Services., Inc. v. Mutual Marine Office, Inc.,* 639 F.2d 1168, 1170 (5th Cir. Unit A 1981); *International Sea Food Ltd. v. M/V Campeche*, 566 F.2d 482, 485 (5th Cir. 1978); *but cf. Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 313-14, 75 S.Ct. 368, 374 (1955)

_____

[2] *Crown Zellerbach*, read in the context of *Olympic Towing Corp. v. Nebel Towing Co.,* 419 F.2d 230 (5th Cir. 1969), which *Crown Zellerbach* overruled, establishes that a liability-limiting term in a marine insurance policy gives rise to a valid policy defense, and that a direct-action plaintiff may not successfully challenge such a policy term on the grounds that the term contravenes either Louisiana's direct action statute, or Louisiana's law regarding personal defenses. 783 F.2d at 1301-02. *Crown Zellerbach* does not hold that an insurer is entitled to literal standing under the Limitation Act.

(noting broad regulatory power Congress reserved to states concerning insurance). And the claimants do not dispute that the underwriters' policy in this case is a contract within the admiralty jurisdiction.

The district court concluded that the underwriters can demand the federal forum to interpret their policy, but we know of no authority for this proposition. Rather, federal courts have jurisdiction over contract actions, including those arising from marine insurance policies, concurrent with any other common law courts having jurisdiction for that purpose. *See* 1 Benedict on Admiralty §122 at 8-6, §123 at 8-10 (1992). And "[s]tate law governs construction of marine insurance contracts except where it is displaced by admiralty law." *Employers Ins. of Wausau v. Trotter Towing Corp.*, 834 F.2d 1206, 1210 (5th Cir. 1988). Thus, both the Louisiana court and the federal court have jurisdiction to interpret Magnolia's insurance policy.

The underwriters also argue that policy interpretation belongs in federal court because this case poses a conflict between admiralty law and state law. The underwriters contend that this conflict arises because direct action could allow the claimants to recover damages against the underwriters in excess of the limitation fund if their policy lacks a liability-limiting term. Interpretation of the disputed term thus brings this conflict to bear. And where admiralty law and state law conflict, federal law must prevail. *Wilburn Boat*, 348 U.S. at

11

314, 75 S.Ct. at 370.   Consequently, the underwriters argue, this conflict mandates exclusive federal jurisdiction.

We disagree.  To date, the Supreme Court has found no conflict between the Louisiana direct action statute and federal law.  *Cushing*, 347 U.S. at 423, 74 S.Ct. at 615.  And we think that, because the Limitation Act protects only the owner, the Act does not preclude the claimant from recovering more than the value of the limitation fund from a party not entitled to claim the Act's protection.  If an insurer fails to contract for the right to limit liability, its direct action liability may exceed the value of the limitation fund without transgressing admiralty law.[3]  But interpreting the Louisiana marine insurance contract at issue in this declaratory judgment action is a task for the Louisiana courts.

The underwriters further argue that the interpretation of a marine insurance policy is necessarily related to limitation, and therefore should be undertaken by the admiralty court.  While the stipulations filed in this case properly acknowledge exclusive admiralty jurisdiction of all issues "related to" limitation, we think that this language compels the federal forum only as to issues affecting the *shipowner's right* to limitation, such as ownership, privity, knowledge, and valuation.  *See Guillot* v. *Cenac Towing Co.*, 366 F.2d 898, 906 (5th Cir. 1966) (noting

---

[3]  While Louisiana law may dictate special contours for the drafting of an effective liability-limiting policy term, we find it inconceivable, as a matter of contract law, that a shipowner and an insurer would not attempt to include such a term.

12

hazard that extra-limitation proceeding may trespass on "the exclusive domain of the Admiralty in adjudicating . . . privity and knowledge . . . ."). And the fact that an insurance policy's liability-limiting term may refer to the federal limitation court's decision does not make the interpretation of that term "necessarily related" to the owner's limitation rights so as to bring policy interpretation within the exclusive federal jurisdiction.

Nor do we think that *Crown Zellerbach* affords insurers the right to an exclusive federal forum or to a concursus of claims. The district court said:

> Magnolia and its insurers argue that the policy language is necessarily a limitation issue. If the state court determines that the [relevant language] is contained in the policy, the state proceeding can go no further, since Magnolia Marine and its insurers would all then be entitled to attempt to limit their liability in this court. [*citing Crown Zellerbach*]. Conversely, in the event that the state court determines the [relevant language] is not contained in the policy, Magnolia *and its insurers* would be subject to a potential judgment without having had the benefit of attempting to limit liability, *an exclusively federal remedy*. . . . Depending on the construction of the particular policy language, an insurer may be *subject to the protections of the Limitation Act . . . .*

*Magnolia Marine*, 755 F.Supp. at 152 (emphasis added). While the district court recognized the problem of protecting the shipowner's insurance when a claimant has a direct action, *see Cushing*, 347 U.S. at 423-27, 74 S.Ct. at 615-17 (Clark, J., concurring) (describing problem), the district court erred in

13

attempting to solve that problem by merging Magnolia's statutory limitation rights with the insurers' contractual rights.[4]

The claimants' stipulations sufficiently protect Magnolia's rights and acknowledge the proper federal jurisdiction. Therefore the district court should allow the claimants to proceed with their state court action, under the saving-to-suitors clause. But because the stipulations do not protect Magnolia from the potential depletion of its insurance coverage, the claimants must first take steps to preserve that coverage, as we discuss next.

C.    PRESERVATION OF SHIPOWNER'S INSURANCE COVERAGE

---

[4]    The court cited *McDonough Marine*, 749 F.Supp. at 133, in support of its conclusion that the insurers enjoy Limitation Act standing. In that case, wrongful-death plaintiffs sued the barge owner and the barge manufacturer in state court. The manufacturer filed its cross-claim against the owner in the owner's subsequent limitation action. The manufacturer then asked the admiralty court to stay the state court claims against the manufacturer because of the exclusive jurisdiction and concursus provisions of the Act. The *McDonough* court determined that it could not enjoin proceedings "in which claimants seek remedies against parties not subject to the Limitation Act's protections." *Id.* at 133.

The district court in this case also noted *McDonough*'s discussion of *In re Brent Towing Co.*, 414 F.Supp. 131 (N.D. Fla. 1975). *Brent Towing* dealt with claimants' efforts to lift the stay of their state court claims against a vessel insurer in Florida, which does not permit a separate direct action against insurers. *Id.* at 132-33. Apparently lacking the necessary stipulations, the *Brent Towing* court was forced to stay claimants' state court proceedings against the owner, and then against the insurer as well because the insurer could not be sued apart from the owner. So neither *Brent Towing* nor *McDonough* supports the underwriters' right to demand limitation, concursus, exclusive federal jurisdiction, or stay of state court proceedings in a case where stipulations adequately protect the shipowner.

Although Congress intended the Limitation Act to benefit the shipping industry, it declined to extend protection to many categories of industry actors. *Cushing*, 347 U.S. at 421-22, 433, 74 S.Ct. at 615, 621. *See also* 3 Benedict on Admiralty § 45 (Act does not protect time charterers, ship agents, masters, seamen, etc.). In fact, the Act does not promise shipowners freedom from liability, but only limited liability. *Lake Tankers*, 354 U.S. at 152-53, 77 S.Ct. at 1272-73.

Magnolia argues that it may contract for freedom from liability by purchasing insurance, and therefore insurance policy interpretation is necessarily related to limitation. Indeed, a majority of the *Cushing* court recognized that a shipowner is entitled to insure its investment, and that depriving the shipowner of its insurance would conflict with the policy of limited liability. *See Cushing*, 347 U.S. at 418-19 (Frankfurter, J.); *id* at 424 (Clark, J., concurring). We recognize that Magnolia might lose insurance protection if Louisiana furnishes Frye a direct action.[5] Assuming that the underwriters somehow are unable to limit their liability contractually, and assuming that Magnolia is entitled to limitation, then a judgment in the direct action for damages against the underwriters, for an amount exceeding both the limitation fund and the policy coverage, could

---

[5] We profess no opinion on the availability of direct action against a marine underwriter in Louisiana under the type of contract at issue in this case, because that question is not before us on appeal.

15

encroach upon the coverage available to Magnolia.[6]  If this judgment is entered before the limitation action, the judgment could effectively deplete Magnolia's coverage below the amount of the limitation fund.  *Cushing*, 347 U.S. at 418-19, 74 S.Ct. at 613; *Guillot*, 366 F.2d at 904.

Recognizing the problem, this court has safeguarded shipowners' policy rights in a direct action case by following Justice Clark's recommended procedure.[7]  To avoid depletion of the owner's coverage, this court has required the limitation

---

[6]  If an underwriter's policy capped coverage at $100,000 and the admiralty court limited the insured shipowner's liability to $5,000, then a claim of $110,000 might endanger coverage in a direct action in the following manner.  If the state-court direct action proceeded first to a judgment of liability and damages in the amount of $110,000, and the insurer paid the policy limit of $100,000 in satisfaction of that judgment, then the underwriter would have no further liability to the shipowner.  The claimant could then proceed in the admiralty court against the shipowner to recover the additional $10,000.  If the admiralty court then set the shipowner's liability at $5,000, the shipowner would be liable to pay the claimant $5,000, but could no longer recover from the underwriter.  The shipowner would have received the protection of the Limitation Act, but not the protection of his insurance coverage because it was depleted in the direct action.

[7]  Justice Clark protected the shipowner's coverage by "requir[ing] that the limitation proceeding be concluded first and the owner's liability settled under it.  The . . . [underwriters] could then discharge this liability, to the extent their policies covered it, by paying into the limitation proceeding the proper sum.  The door would then be left open for prosecution of direct actions against the insurance companies on the remaining coverage of the policies.  347 U.S. at 425.  In *Coleman v. Jahncke Service, Inc.*, 341 F.2d 956, 960 (5th Cir. 1965), this court recognized that *Cushing* requires, if nothing else, that shipowners be protected from losing their insurance coverage when that coverage is threatened by a direct action.  And *Cushing* "establishes a procedure to be followed by lower courts in handling similar cases until the Supreme Court further clarifies the issues." *Ex parte Tokio Marine & Fire Ins. Co.*, 322 F.2d 113, 115-16 n.6 (5th Cir. 1963).

action to precede the direct action.  *Guillot*, 366 F.2d at 905.
Structuring the litigation according to *Cushing* and *Guillot*
avoids potential unfairness by giving the limitation court the
first opportunity to allocate insurance proceeds to cover as much
risk as the shipowner contracted to shift to insurers.  And this
approach avoids expanding the Limitation Act's coverage beyond
what Congress has stated and our authorities have sanctioned.

Consequently, we require the district court to continue the
stay of Frye's state court suit against Magnolia and its
underwriters, until the court has taken such steps as it deems
necessary to protect Magnolia's contractual rights.  We recognize
that Justice Clark's *Cushing* chronology is not the only possible
strategy, and that other methods may achieve an equivalent
result.  For example, the court might permit claimants to
stipulate Magnolia's priority claim to insurance proceeds in the
event that Magnolia is entitled to limitation and the insurers
are subject to direct action.

D.   THE DECLARATORY JUDGMENT ACTION

We *sua sponte* consider whether we have authority to review
the district court's denial of the claimants' motion to dismiss
the declaratory judgment suit.  Originally, Magnolia's
underwriters filed a separate suit under the Declaratory Judgment
Act, claiming the right to the federal forum for the
interpretation of Magnolia's policy.  The district court
consolidated that suit with Magnolia's suit for limitation of
liability.  In the consolidated proceeding, the district court

17

entered its order granting the injunction from which the claimants appeal. This same order also vacated the stay of the limitation proceeding and denied, on the merits, the claimants' motion to dismiss the declaratory judgment suit. In this order, the district court explained that it decided to reopen the limitation proceedings and enjoin the state court proceedings for three reasons: (1) the underwriters have the right to seek limitation of their liability in federal court; (2) interpretation of the underwriters' insurance policy is necessarily a function of the limitation proceeding; and (3) the claimants failed to file stipulations protecting the underwriters' limitation rights. All three of these reasons are predicated upon the right of the underwriters to their declaratory judgment as a product of their limitation of liability rights. We have rejected that predicate. The ground for denying the dismissal of the declaratory judgment suit, being precisely the same, must be likewise rejected in this decision.

28 U.S.C. §1292(a)(1) provides the basis for appeal of interlocutory injunctions entered in the course of limitation proceedings, *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 640 F.2d 560, 565 (5th Cir. 1981), and the claimants brought this appeal under that authority. And "an order granting or refusing an injunction brings before the appellate court the entire order, not merely the propriety of injunctive relief, and [the appellate court] may decide the merits" so long as concerned "only with the order from which the

18

appeal is taken."  *Marathon Oil Co. v. United States*, 807 F.2d 759, 764 (9th Cir. 1986).  But our jurisdiction is not limited to the specific order appealed from, *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 287, 61 S.Ct. 229 (1940), and we may review all matters which "establish the immediate basis for granting injunctive relief."  *See* C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure §3921 (1977).[8]

In this case, the district court initially enjoined the state court proceedings according to the Limitation Act.  The court lifted this injunction, but later reinstated it after deciding that the underwriters could claim the Act's protection for themselves and litigate policy coverage in federal court as part of Magnolia's limitation suit.  To consider the claimants'

---

[8]  Federal appellate courts have invoked the doctrine of pendent appellate jurisdiction to consider issues contained in collateral orders that are related to an appealable order, once the court has taken jurisdiction of the appealable order and found "sufficient overlap in the factors relevant to [the appealable and nonappealable] issues to warrant [the] exercise of plenary authority over the appeal." *San Filippo v. U.S. Trust Co.*, 737 F.2d 246 (2nd Cir. 1984), quoting *Sanders v. Levy*, 558 F.2d 636, 643 (2nd Cir. 1976), *rev'd on other grounds, Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380 (1978); *Scarlett v. Seaboard Coast Line R. Co.*, 676 F.2d 1043, 1052 (5th Cir. 1982).  In *Marathon Oil Co. v. United States*, 807 F.2d 759, (9th Cir. 1986), the court ruled that orders separate from an injunction-granting order would be considered on appeal if "inextricably bound up" with the injunction.  *Id*. at 764.  An order may be inextricably bound up with the injunction if the injunction requires the appellant to comply with that order, *Id.*, or if "separate consideration would involve sheer duplication of effort by the parties and [the] court," *Patterson v. Portch*, 853 F.2d 1399, 1403 (7th Cir. 1988), or if the propriety of the injunction depends on the correctness of issues resolved in the other order summary, as in *Sierra Club v. Department of Transportation*, 948 F.2d 568, 571 (9th Cir. 1991) (judgment issues upon which injunction was grounded are appealable).

appeal of the injunction under these circumstances, we have no alternative but to consider whether Magnolia's underwriters had legal justification to demand a federal forum and limitation of liability. The fact that the underwriters raised these issues pursuant to a declaratory judgment did not preclude the district court from considering these issues in granting the injunction, and does not now prevent us from reviewing the district court's decision to grant it. The district court's erroneous sanction of the underwriters' claims was the immediate basis for enjoining other proceedings against Magnolia. The fact that the district court's order denying the motion to dismiss the separate declaratory judgment suit would not be appealable apart from the injunction does not affect our ruling. Because we think that the district court erred in denying the claimants' motion to dismiss, we reverse.[9]

The district court's decision to grant declaratory relief is discretionary, and we review that decision for abuse of discretion. *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 & n.2 (5th Cir. 1983). We first note that the district court erred as a matter of law when it refused to dismiss the declaratory judgment action based on the conclusion that the underwriters have the same standing as the insured shipowner to

---

[9] We think that our jurisdiction of the injunction allows us to resolve all of the issues raised by the declaratory judgment suit. We choose to reverse rather than to remand a suit with no controversy remaining.

20

limit liability, and to demand the federal forum to adjudicate policy limitation.

In *Rowan Cos. v. Griffin,* 876 F.2d 26 (5th Cir. 1989), this court set out the factors for district courts to consider in deciding whether to grant declaratory relief, or to stay or dismiss a declaratory judgment suit in deference to a state court action involving the same parties and issues. The court may deny declaratory relief

> because of a pending state court proceeding in which the matters in controversy between the parties may fully litigated, . . . because the declaratory complaint was filed in anticipation of another suit and is being used for the purpose of forum shopping, . . . because of possible inequities in permitting the plaintiff to gain precedence in time and forum, . . . or because of inconvenience to the parties or the witnesses.

*Id.* at 29 (citations omitted). "Fundamentally, the district court should determine whether the state action provides an adequate vehicle for adjudicating the claims of the parties and whether the federal action serves some purpose beyond mere duplication of effort." *PPG Indus., Inc. v. Continental Oil Co.,* 478 F.2d 674, 682 (5th Cir. 1973), *citing Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173 (1942). The district court should consider denying declaratory relief to avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation" if "the claims of all parties . . . can satisfactorily be adjudicated in [the state court] proceeding." *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1176.

21

In this case, Frye's notice to the court of her intent to file a direct action against the underwriters in state court immediately preceded and prompted the underwriters' filing of their declaratory judgment suit. The underwriters are parties to the state court suit, and the issues pertaining to liability, direct action, and policy limitation may be fully adjudicated in that action. These parallel suits may duplicate the litigation of a difficult, unresolved question of Louisiana law regarding the availability of direct action under a marine insurance policy such as the one at issue in this case. And litigation of policy coverage in the state court could be structured in a manner that will not unduly inconvenience the parties.[10]

Divested of their contentions regarding Limitation Act standing and exclusive federal jurisdiction, the underwriters demand declaratory judgment solely to obtain their preferred forum in which to anticipate a defense that they could adequately raise against Frye in Louisiana court. This is inadequate to support the decision to entertain a declaratory judgment. *See, e.g., Mission*, 706 F.2d at 602-03 (no declaration where convenient alternative forum capable of resolving issues in dispute); *Dresser Indus., Inc. v. Ins. Co. of North America*, 358 F.Supp. 327, 330 (N.D. Tex.), *aff'd*, 475 F.2d 1402 (5th Cir.

---

[10] We anticipate that the federal court will resolve the limitation action first and, if necessary, take steps to protect the shipowner's insurance coverage. Then the state court will try the issues of policy limitation, liability, direct action, and damages.

22

1973) (no declaratory judgment suit merely to obtain change of tribunal).

In this case, the district court was aware that a state court suit was pending which would involve the same parties and issues as the proposed declaratory judgment action, and that interpretation of Magnolia's insurance policy is governed by state law. The district court abused its discretion when it chose not to stay or dismiss the declaratory judgment action to avoid duplicative and piecemeal litigation.

## CONCLUSION

In sum, we hold that the district court erred by enjoining the prosecution of Frye's Louisiana suit, for the reason that the claimant's stipulations did not extend to the shipowner's underwriters. The district court further abused its discretion by declining to stay or dismiss the underwriters' declaratory judgment action. We confirm, however, that Magnolia's contractual rights should be protected if necessary by enjoining the state court suit until the limitation action is resolved.

We need not address whether Louisiana law affords Frye a direct action against the underwriters on a policy of marine insurance. The issue was not presented to the trial court and is not properly before us.

The injunction remains, pending remand and reconsideration by the district court.

**REVERSED AND REMANDED**

**DeMOSS, Circuit Judge, DISSENTING:**

In the published opinion (<u>Magnolia Marine Transport Co. v. Frye</u>, 755 F. Supp. 149 (E.D. La. 1991) from which this appeal has been taken, the Trial Court concluded its opinion by taking the following actions:

> "IT IS ORDERED that the motion of defendants in Civil Action No. 90-3053 to dismiss the declaratory judgment action is DENIED.
>
> "IT IS FURTHER ORDERED that the stay previously ordered in Civil Action No. 89-1361 on August 22, 1990, is VACATED and clerk is DIRECTED to re-open Civil Action No. 89-1361 and restore said case to the Court's docket.
>
> "IT IS FURTHER ORDERED that all other proceedings in this matter, including the pending state court action, involving Magnolia Marine and/or its insurers are hereby ENJOINED pursuant to Rule F(3) of the Supplemental rules for Certain Admiralty and Maritime Claims, pending further orders of this Court.
>
> "IT IS FURTHER ORDERED that plaintiff insurers in the declaratory judgment action file their motion for summary judgment on the issue of whether the insurance policy language allows them to limit their liability within thirty (30) days of receipt of this Order."

Because I believe the Trial Court was correct in ordering each of these actions, but perhaps did not articulate sufficient reasons for its actions, I respectfully DISSENT from the foregoing opinion of the panel majority and file the following explanation:

A.    <u>Denial of the motion to dismiss the declaratory judgment action</u>

While ordinarily a denial of a motion to dismiss is not an appealable order, I accept for the purposes of this appeal the

24

portion of the panel opinion which sustains our appellate juris-
diction of this action by the Trial Court under 28 U.S.C.
1292(a)(1).  I disagree completely, however, with the panel
opinion that the Trial Court abused its discretion by refusing to
dismiss the declaratory judgment action.

First of all as the Trial Court stated in footnote 2 on page
151 of its published opinion:

> "Because the Court is, by this Order, lifting
> the stay of the limitation case and enjoining
> further state court proceedings, the motion
> to dismiss the declaratory judgment suit on
> the basis of the pending state court action
> is moot."

That makes eminent good sense to me.  To dismiss the
declaratory action, and at the same time enjoin the prosecution
of the state court proceeding in which allegedly the same issues
contemplated by the declaratory judgment action could be tried,
certainly would not contribute to the efficient disposition of
the legal issues between the parties.  More importantly, there
were unique circumstances involved in this case which are not
involved in the typical case where appellate courts have reviewed
the circumstances under which the federal district court may
entertain a declaratory judgment suit: i.e. (i) at the time the
declaratory judgment action was filed in the U.S. District Court,
the limitations of liability action of Magnolia Marine was
already pending in that same U.S. District Court; and the
consequent fact that all of the parties, other than the plaintiff
underwriters in the declaratory judgment action, were already
present before the same U.S. District Court; (ii) the fact that

25

from August 3, 1988, when Magnolia Marine first filed its limitation of liability suit until August 22, 1990, the state court proceeding was stayed by reason of the automatic stay order issued by the U.S. District Court and that all discovery depositions between the parties, regarding the circumstances of the collision and the insurance coverages involved, were taken pursuant to subpoenas issued by the U.S. District Court in the limitation of liability proceedings; (iii) the fact that at the time the marine underwriters filed their declaratory judgment action in the federal court, they had not been brought into the state court proceeding by Plaintiff Frye; (iv) the fact that the state district court and the federal district court are separated by only 10 blocks in downtown New Orleans, which is the venue selected by the plaintiff Frye; and (v) the fact that whether in the federal district court or the state district court, the issues regarding policy coverage in the declaratory judgment action would be governed by the same state law, i.e., the Louisiana Direct Action Statute.

For all of these reasons I think it was clearly within the discretion of the Trial Court to choose to entertain the declaratory judgment action which is precisely what the Federal Declaratory Judgment Statute says he <u>may</u> do.

**B.** **Reopening of the Limitation of Liability Proceeding**

The second action which the Trial Court took is not really addressed in the panel opinion, except to the extent that it is necessarily the other side of the coin of the dispute about the

26

Trial Court's issuance of the stay of the state court proceeding. However, one cannot read the portion of the Trial Court's opinion on page 151 which relates to the circumstances of the conference on August 22, 1990, without sensing that the Trial Court feels that counsel for all parties failed to properly advise the Court as to the propriety of the actions which the Court took on that day.

C.    **The Stay of the State Court Proceeding**

In assessing the propriety of the Trial Court's action in staying the state court proceedings, there are two circumstances which are determinative and must be kept clearly in mind: first, in exercising the injunctive power, the Trial Court relied expressly and exclusively on Rule F(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims and not on any general injunctive power derivative from the pendency of the declaratory judgment action in the same consolidated matter as the panel opinion infers; and second, there were two claimants in the limitation of liability proceeding, Mrs. Frye for the death of her deceased husband Joseph, and Bisso for the damages to its vessel; and the aggregate of their claims exceeded the value of the Magnolia Marine vessel which is the subject of the limitation of liability proceeding.  In short, the exercise of the injunctive power was attendant to the standard and historic powers given to the federal district court in limitation of liability proceedings; and this was what is characterized as a multiple-claims-inadequate-fund case.  Since the decision in

27

<u>Pershing Auto Rentals, Inc. v. William C. Gaffney, et al.</u>, 279 F.2d 546 (5th Cir. 1960, John R. Brown), the law of this Circuit has been fixed that trial of all claims must occur in the limitation of liability proceeding when multiple claims either exceed the fund or there is reasonable apprehension that they will.  There are only two special circumstances when a federal court may permit a claimant or claimants to first try the issue of liability <u>vel</u> <u>non</u> and damages in actions outside of the limitation of liability proceeding: first, where there is only one claimant, <u>Langnes v. Green</u>, 282 U.S. 531, 51 Sup. Ct. 243, 75 L. Ed. 520); and second, where there are multiple claimants who stipulate that their claims in the aggregate do not exceed the value of the vessel tendered in the limitation of liability proceeding, <u>Lake Tankers Corp. v. Henn</u>, 354 U.S. 147, 77 Sup. Ct. 1269, 1 L.Ed. 2d 1246 (1957).  The Trial Court in our present case recognized that neither of these special situations permitting trial outside of the limitation of liability proceeding exist in the present case.  If the Trial Court had simply terminated its discussion at that point, his ruling on this action would have been unassailable, but the Trial Court went on to discuss the need for the stipulations filed in this case to address rights of the marine underwriters.  It was that additional language which prompted the panel majority to spend an inordinate amount of time explaining (i) why marine underwriters are not entitled to the benefits of the Limitation of Liability Act; (ii) why the marine underwriters are not entitled to

28

concursus of claims; and (iii) why the District Court erred in "merging Magnolia's statutory limitation rights with the insurer's contractual rights," all of which is unnecessary and immaterial.  Bottom line, this Circuit has never approved the form and content of a stipulation to be filed by a claimant in a multiple-claim-inadequate-fund case because all of those cases are to be first tried in the limitation of liability proceeding.  To the extent that the panel opinion seems to say that the Trial Court should devise an alternate form of stipulation, I suggest that the panel is making new law inconsistent with settled precedent in this Circuit.

Furthermore, the stay order as issued by the Trial Court prohibits state court actions against "Magnolia Marine and/or its insurers".  There is clear and express authority in this Circuit for that injunctive relief applying to both the shipowner, Magnolia Marine, and its marine insurers.  Guillot v. Cenac Towing Co., 366 F.2d, 898 (1966).  Speaking for this Court in that case, Judge John R. Brown stated:

> "That means that as to the direct action against the insurers of the shipowner as such, the injunction was proper and the trial thereof must be stayed until disposition of the limitation proceedings." at p.905.

Consequently, even it the panel majority is correct that the Trial Court erred in not dismissing the marine insurers declaratory judgment action, the Frye and Bisso claimants are still not entitled to try first their suit against the marine

29

underwriters in a state court proceeding under the Louisiana Direct Action Statute.

Finally, I want to register my disagreement with the inference, which the panel opinion attempts to create on page 12 of its opinion, that the issues to be litigated in the Federal Limitation of Liability Proceeding relate only to "issues affecting the shipowner's right to limitation, such as ownership, privity knowledge, and valuation. See Guillot v. Cenac Towing, 366 F.2d 898, 906 (5th Cir. 1966)." First of all, the Guillot opinion, as mentioned above, should have been cited by the panel majority (but was not) for the proposition that the injunctive relief issued by the District Court under Rule F(3) against any direct action in the state court was proper equally as to the marine insurers as to the owner of the vessel involved in the limitation of liability proceeding. Rather the panel opinion selects a phrase out of the second part of the Guillot opinion dealing with the propriety of a simultaneous state court action against the corporate officers of the Shipowner and converts that selected phrase from a specific recognition, of two elements (privity and knowledge) which are clearly exclusive to the limitation of liability proceeding, to a general classification of all exclusive elements which it is not. In my view, the elements of "fault and liability" are absolutely essential elements of the determination of the shipowner's right to limit liability. Certainly in this case involving collisions in Louisiana waters between three navigating vessels and the

30

potential of a direct action in state court against marine underwriters, the words of Justice Clark in effecting the compromise in Cushing are controlling and determinative:

> "Our only interest is to make certain that such actions [against insurance companies under the Louisiana Direct Action Statute] do not interfere with the Federal Limitation Proceeding. To do this we need only require that the limitation proceeding be concluded first and the owner's liability settled under." p.425 (emphasis added)

I believe, therefore, that the panel opinion "muddies" what I thought would have been the "settled waters" of our Circuit's juris prudence that trial in the limitation of liability proceeding would encompass all issues relevant to a determination of whether the shipowner is entitled to be exonerated from or limited as to its liability for the casualty involved. I think the panel opinion is in error in suggesting that such a determination can be made "only as to issues affecting the shipowner's right to limitation, such as ownership, privity, knowledge, and valuation" without including all issues regarding liability.